BARBER v. OTIS MOTOR SALES CO.

(Circuit Court of Appeals, Second Circuit.   December 20, 1916.   On Petition for Rehearing, February 7, 1917.)

No. 83.

1. PATENTS ⬤=328—VALIDITY AND INFRINGEMENT—MOTOR ENGINE.
    The Barber patent, No. 781,802, for an internal combustion engine the essential feature of which is a combination which permits the ready and easy removal of the valve units with the valves for inspection, repair, or replacement without requiring the disconnection of other parts, was not anticipated and discloses patentable invention; also, *held* infringed.

2. PATENTS ⬤=26(2)—INVENTION—COMBINATION OF OLD ELEMENTS.
    A patent is not to be defeated by showing that all the elements are old, where they are not shown in combination, and in the combination of the patent by their conjoined action they produce a new result.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 29.]

3. PATENTS ⬤=243—INFRINGEMENT—UNITING OF PARTS.
    Neither the joinder of two elements in one integral part, accomplishing the purpose of both and no more, nor the separation of an integral part into two, doing together substantially what was done by the single element, will avoid a charge of infringement.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 382–384.]

4. PATENTS ⬤=51(1)—"ANTICIPATION"—ELEMENTS.
    To find in the prior art each element in isolation is not to "anticipate" the work of a patentee who by inventive act first evolves a new combination of these elements, which by their conjoined functions produce a new result.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 66, 67, 69, 74.
    For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

On Petition for Rehearing.

5. PATENTS ⬤=324(1)—SUITS FOR INFRINGEMENT—REVIEW ON APPEAL.
    After the decree in an infringement suit has been affirmed, the appellate court cannot properly grant a rehearing to permit the defeated

---

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

party to exhibit before it structures not in evidence, which would result, not in review of the decision below, but in a new trial on new evidence.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 600, 604, 605.]

Appeal from the District Court of the United States for the Northern District of New York.

Suit in equity by William Barber against the Otis Motor Sales Company. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 231 Fed. 755.

This cause comes here on an appeal from an interlocutory decree entered in the United States District Court for the Northern District of New York on April 8, 1916. The complainant is a citizen of the United States and a resident of the borough of Brooklyn in the state of New York. The defendant is a corporation organized and existing under the laws of the state of New York and doing business in the city of Utica in that state.

Coudert Brothers, of New York City (R. A. Parker, of New York City, of counsel), for appellant.

Fred Francis Weiss, of New York City (Samuel E. Darby, of New York City, of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. [1] This action is brought by the plaintiff, who alleges the infringement of patent No. 781,802, which was issued to him by the United States Patent Office on February 7, 1905.

The complainant's structure and the defendant's structure represent internal combustion engines. Combustible material in the form of a gas or vapor mingled with air is drawn through a valve into the working cylinder which carries the piston and is there burned. The gases are thereby expanded by heat and press upon the piston to produce motion and power.

At the time complainant took out his patent, explosive engines were not new, and valves and valve gear were not new. The inlet and exhaust passages and their mode of operation were old. The patent concedes this and claims an improvement. In his specification the patentee declared that:

"The object of my invention is to provide a motor engine of the explosion-vapor type of a simple and cheap form of construction, so made that the inlet and exhaust valves thereof may be quickly and easily removed from the body of the motor without disturbance of the other parts, and quickly cleaned, adjusted, or renewed, as occasion may require, and returned to position, and also to provide motors of such type with a combined electric circuit making and breaking and speed-regulating device of improved form."

He described his invention as follows:

"To such ends my invention consists, in substance, of a cylinder, a piston reciprocating in the cylinder, a crank shaft in actuative connection with the cylinder by means of a connecting rod, an explosion chamber adjacent to the

cylinder in communication with inlet and exhaust passages, an exhaust-valve plug located in the exhaust passage, a normally spring-closed exhaust valve carried by the exhaust-valve plug, a gear wheel carried by the crank shaft, a combined gearing and a cam wheel rigidly mounted upon an idler shaft meshing with a wheel carried by the crank shaft, and a rod reciprocating in a slip journal actuated by the cam so as to open the exhaust valve, such rod being adapted by rotation upon its axis to be thrown out of engagement with the rod of the exhaust valve, a contact wheel rigidly secured upon the outer end of the idler shaft carrying combined spur gear and cam wheel, a plate of insulating material vibratorily mounted adjacent to the contact wheel, a spring contact carried by such insulating plate in electrical connection with one terminal of a sparking plug, the sparking point of which is located in the chamber of the motor, the other sparking point of which plug is in connection by way of the motor frame with the contact wheel carried by the idler shaft by way of a source of electric energy, means for vibrating the insulated disk or plate so as to change the point of contact as the idler shaft is rotated, an inlet valve bushing adapted to be secured in the casing of the explosion chamber, so as to be in communication therewith with the atmosphere and with the explosive vapor supply source, and an inlet-valve plug carrying a normally closed inlet-valve adapted, to inclose the inlet bushing, although it is not to be understood that my invention is limited to a device comprising at once all of the devices and parts before mentioned as the same consists of the construction of certain devices and parts and the construction, combination and arrangement of certain devices and parts, all as hereinafter more particularly set forth in the description and pointed out in the claims."

That which constitutes his invention is the provision of a combination of elements in a valve structure for motor engines which permits the ready and easy removability of the valve units, with the valves, for inspection, cleaning, repair, or replacement, without requiring the disconnection of supply or exhaust pipes, or other parts, and without disconnecting or removing the cam actuated valve operating rod from its support, or interfering with or disturbing the timing mechanism or other parts or disassembling the valve unit.

There are 13 claims in the patent, but of these only claims 8 and 9 are involved in this suit.

Claim 8 reads as follows:

"In an explosion motor, the combination with an explosion chamber having a T-shaped gas passage the main central or stem portion of which forms the explosive vapor inlet, of a valve-seat ring provided with gas passages located in the end of the head portion of the T-passage adjacent to the explosion chamber, a puppet valve carried by the valve-seat ring opening toward the explosion chamber, a spring normally keeping the valve in the closed position, and a screw plug provided with a perforate peripheral wall and a closed outer and an open inner end closing the outer or air end of the head portion of the T-shaped passage and holding the valve-seat ring in position thereof, through the perforations in the wall of which the explosive vapor passes from the main or stem portion of the T to the valve at the open end of such plug, substantially as shown and described."

The above claim deals mainly with the inlet and inlet-valve construction.

Claim 9 reads as follows:

"In an explosion motor, the combination with an explosion chamber having a T-shaped gas passage the main central or stem portion of which forms the exhaust orifice of the explosion chamber of a screw plug closed at the outer

end, open at the inner end and having a perforated peripheral wall so as to give free communication between the central hollow thereof and the main stem or central passage and the explosion chamber located in the head portion of the T-shaped passage, a puppet valve the stem of which projects outward through the head of the plug seated upon the inner end of the plug so as to cut off communication between the main stem portion of the T-passage and the explosion chamber except when the same is forced away from the seat and toward the explosion chamber, a spring for normally keeping the valve in the closed position and means for forcing the valve stem inward so as to open the valve actuated by the motor and adapted to be removed from contact with the valve stem without removal from the support thereof so as to permit of removal of the plug and valve by the unscrewing of the plug, substantially as shown and described."

The above claim deals with the plug and valve and of their removal by the unscrewing of the plug.

The defendant in its answer denied the validity of the patent and that the patentee was the original and first inventor of the improvements for which the patent issued. It also alleged:

"That the various asserted combinations in claims thereof of said patent are not for valid combinations, for the reason that the various elements thereof are all old and but perform their own functions regardless of their association with other elements in said claims and that the resultant operation is but that of the sum total of the operation of the various elements only."

A large number of patents have been set up to defeat the complainant's claim. The court below examined them all carefully and reached the conclusion that the patent in suit was not anticipated but disclosed patentable invention in view of and in face of the prior art. In the course of his opinion, Judge Ray said:

"It is vain to search the prior art for a construction and combination like this. Each and every patent in evidence which shows a valve cage or a screw plug or a combination of both has one or more obstructions to a removal of these parts which interfere with the removal of the valves. Various of these patents show that efforts had been made in the direction of securing a quick removal of the valves, but no one had fully solved the problem until Barber came into the field. In a sense and to an extent at least he is a pioneer. In but one or two of the prior patents is any reference made to the problem which Barber sought to solve."

It will serve no good purpose for this court to traverse step by step the ground which the District Judge has very carefully gone over in his opinion. It must suffice to say that our examination of the patent and of the patents of the prior art fails to convince us that any mistake was made by the District Judge in sustaining the validity of this patent.

[2, 4] The validity of a patent is not to be defeated by simply showing that all the elements of a patent are old, where they do not show all of the elements of the claims in combination. And this the defendant has not shown. To find in the prior art each element in isolation is not to anticipate the work of a patentee who by inventive act first evolves a new combination of these elements, which by their conjoined functions produce a new result. Benthall Machine Co. v. National Ma-

chine Corporation (D. C.) 222 Fed. 918 (1915); Western Electric Co. v. Millheim Electric Tel. Co. (C. C.) 88 Fed. 505 (1898).

The validity of the patent being determined, there remains the question of infringement.

An analysis of claim 8 shows the following elements:

(1) An explosion chamber which has (a) a T-shaped gas passage, the main central or stem portion of which forms the explosive-vapor inlet.

(2) A valve seat ring (b) provided with gas passage and (c) located in the end of the head portion of the T-passage adjacent to the explosion chamber.

(3) A puppet valve (d) carried by the valve seat ring and (e) opening towards the explosion chamber.

(4) A spring (f) normally keeping the valve in the closed portion.

(5) A screw plug provided with (g) a perforate peripheral wall, (h) a closed outer end, and (i) an open inner end (j) closing the outer or air end of the head portion of the T-shaped passage and (k) holding the valve seat ring in position (l) through the perforations in the wall of which (screw plug) the explosive vapor passes from the main or stem portion of the T to the valve at the open end of such plug.

An analysis of claim 9 shows:

(1) An explosion chamber which has (a) a T-shaped gas passage the main central or stem portion of which forms the exhaust orifice of the explosion chamber.

(2) A screw plug having (b) a perforated peripheral wall so as to give free communication between the central hollow thereof and the main stem or central passage and the explosion chamber, and (c) located in the head portion of the T-shaped passage.

(3) A puppet valve (d) the stem of which projects outward through the head of the plug (e) seated upon the inner end of the plug so as to cut off communication between the main stem portion of the T-shaped passage and the explosion chamber except when the same is forced away from the seat and towards the explosion chamber.

(4) A spring (f) for normally keeping the valve in the closed position.

(5) Means for forcing the valve stem inward so as to open the valve, and (g) actuated by the motor (h) and adapted to be removed from contact with the valve stem without removal from support thereof so as to permit of removal of the plug and valve by the unscrewing of the plug.

It is the opinion of this court that every element of claims 8 and 9 of the plaintiff's patent finds full and complete response in purpose, function, relation, and mode of operation in corresponding features of defendant's structure. Plaintiff asserts, and the evidence sustains the assertion, that the defendant has produced a simple and cheap form of structure which permits the ready, easy, quick, and convenient removal of the inlet valve unit, including screw plug valve, cage, valve, and spring without requiring the disconnection of the supply

pipe or other parts without disconnecting or removing the cam actuated valve operating rod or mechanism from its support and without interfering with or disturbing the timing mechanism or other parts.

The defendant's structure has:

1. An explosion chamber comprising the space into which the explosive vapor mixture is introduced and within which such vapor is compressed, ignited, and exploded. There is in it a T-shaped passage which is the equivalent of complainant's T-shaped passage.

2. A valve seat ring.

3. A puppet valve which closes the inner end of the plug and opens towards the explosion chamber. The open inner end of the plug affords a passage for the explosive vapor to gain access from the central hollow of the plug to the explosion chamber when the valve is. unseated.

4. A spring which normally keeps the valve in a closed position.

5. A screw plug, closed at its outer end and open at its inner end adjacent to the explosion chamber. The peripheral wall of the screw plug is formed with openings through which the explosive vapor gains access from the vapor supply pipe to the interior of the plug.

The valve unit, including the screw plug, valve, and spring is removable by unscrewing the plug from its seat in the cylinder casting.

[3] The defendant asserts that in defendant's structure the screw plug and valve seat ring are made in one integral piece and that in plaintiff's structure the inlet valve unit is made in two separate pieces, namely, the screw plug, and the valve seat ring. The argument is that this amounts to a substantial difference between the two structures, and is sufficient to enable the defendant to escape from the charge of infringement. When it comes to the question of infringement, it is not important that in the one structure the screw plug and the valve seat ring are made in two separate pieces, while in the other they are made in one integral piece. There is no substantial difference in means, purpose, structure, or mode of operation. The defendant cannot escape the consequences of its appropriation and use of all the benefits, advantages, and utility of the patent in suit on the plea that the valve cage is made in one piece integral with the valve seat ring in its structure, whereas in the plaintiff's structure these parts are made in two separate pieces. We agree with the Circuit Court of Appeals in the Sixth Circuit when it said, speaking through Judge Lurton in Nathan v. Howard, 143 Fed. 889, 893, 75 C. C. A. 97, 101 (1906), that:

"Neither the joinder of two elements into one integral part accomplishing the purpose of both and no more, nor the separation of one integral part into two, together .doing precisely or substantially what was done by the single element, will evade a charge· of infringement."

And see Dowagiac Mfg. Co. v. Brennan, 127 Fed. 150, 62 C. C. A. 257; Bundy Mfg. Co. v. Detroit Time Register Co., 94 Fed. 524, 36 C. C. A. 375; Bonnette Arc Lawn Sprinkler Co. v. Koehler, 82 Fed. 428, 27 C. C. A. 200.

As the complainant and defendant have the same structures with substantially the same functions, the complainant's patent, as respects claims 8 and 9, is infringed.

Decree affirmed, with costs.

## On Petition for Rehearing.

Edmund Wetmore, Lawrence E. Sexton, and Robert D. Eggleston, all of New York City, for petitioner.

PER CURIAM. [5] Judge Ray found the claims in controversy valid and infringed. This court, after a careful and thorough examination of the issues involved, affirmed the opinion. Now the defendant has engaged three new counsel, not apparently in the case when it was argued in this court, and asks for a reargument on the ground that the court misapprehended the scope of the invention. The defendant also asks that as a part of this motion it be permitted to exhibit to the court one of the defendant's standard motor engines, a structure which we understand not to be in evidence. This seems to us to be an extraordinary request, which, if granted, will introduce a novel, and, we might add, revolutionary, practice in patent causes. The question here is always: Did the District Court commit error? If, in considering this question, the court may take into consideration structures not in evidence, the proceeding here will not be one of review, but a new trial on evidence produced here for the first time. Considering the question on the record now before the court, we find no error which would justify a rehearing.

Petition denied.