## THE FILER & STOWELL CO. v. DIAMOND IRON WORKS.

(Circuit Court of Appeals, Seventh Circuit, January 2, 1918. Rehearing
Denied February 8, 1918.)

### No. 2516.

1. PATENTS ⬦⟜177—CONSTRUCTION—CLAIMS.
   While it is improper to import into any combination an element not
   found therein, the court is justified, when the intention is clear, in giv-
   ing to modifying words and phrases a significance ascertainable only by
   reference to the description.

2. PATENTS ⬦⟜328—VALIDITY—MILL REFUSE CUTTER.
   The Dittbenner patent, No. 777,779, for a mill refuse cutter or mill
   hog, for cutting up slabs and edgings and other refuse from mills and
   furniture factories in fine wood for burning, held valid as to claims 3, 4,
   and 6.

3. PATENTS ⬦⟜328—INFRINGEMENT—MILL REFUSE CUTTER.
   The Dittbenner patent, No. 777,779, claims 3, 4, and 6, for a mill refuse
   cutter or mill hog, held infringed; the differences in defendant's device
   being of form merely.

Appeal from the District Court of the United States for the Eastern
District of Wisconsin.

Suit by the Diamond Iron Works against the Filer & Stowell Com-
pany. From a decree for complainant (241 F. 498), defendant appeals.
Affirmed.

From a decree sustaining claims 3, 4, and 6 of patent No. 777,779, and ad-
judging each of the three claims infringed by appellant, this appeal is taken.
The patent pertains to a "mill hog," used in sawmills, etc., for cutting slabs
and edgings into fine wood. The product can be readily burned, no matter
how green the wood.

The machine under consideration consists of a large revolving power cylin-
der carrying knife blades, which brace the wood against stationary anvil
knives. The wood enters at the top through a large centrally located hopper.
Patentee claims to be the first to produce a "hog," where the cutting opera-
tion is somewhat similar to cutting by shears. The three claims involved are
3, 4, and 6, which read as follows:

"3. In a machine of the character described, the combination with a case
and an inclosed rotary cutter head, of an anvil knife supported by said case,
and co-operating knives carried by said cutter head, the said knives being
arranged to pass at an angle, and to cut with a drawing, shearing action, sub-
stantially as described.

"4. In a machine of the character described, the combination with a case
having an interior V-shaped anvil-block and diverging anvil knives applied to
.said anvil-block, of a pair of diverging conical disks, affording a cutter-head,
rotatively mounted, within said case, and disk-knives carried by said disks
and co-operating with said anvil knives, the cutting edges of which disk
knives radiate from the axis of said disks, and the cutting edges of which
anvil knives lie in a plane extending tangentially to a circle struck from the
axis of said disk, whereby the said knives co-operate to cut with a drawing,
shearing action, substantially as described."

"6. In a machine of the character described, the combination with a case
having a centrally located feedhopper and a pair of segmental doors or case
sections, on opposite sides of said hopper, one of said case sections being ad-
justable and having anvil knives adjustably secured thereto, and a cutter

⬦⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

head rotatively mounted in the said case and having knives co-operating with said anvil knives, substantially as described."

F. E. Dennett, of Milwaukee, Wis., for appellant.

F. A. Whiteley, of Minneapolis, Minn., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge (after stating the facts as above). Dittbenner claims to have made a distinct contribution to the art in at least three respects. He located the hopper centrally, thereby eliminating the services of an operator, and through the force of gravity increased the capacity of the machine. He located the anvil knife, appropriately constructed, in one of the movable sections of the case, thereby making it easy to remove for sharpening or adjustment. He substituted this anvil knife for the bed plates in the throat of the hopper in the prior art construction. He so located the anvil, the anvil knives, the hopper and the cutter head carrying a plurality of knives, which co-operated with the anvil knives in such way as to give a shearing effect. The alleged net result was the elimination of a man, the increase in the capacity of the machine, and the reduction of power necessary to accomplish the same amount of work. That such a contribution constituted invention is not open to serious doubt.

[1, 2] It is claimed, however, by appellee, that the claims of the patent in suit are invalid because anticipated, and that appellee's structure does not infringe. The following figures illustrate the structures represented by the prior art, relied upon in this case:

FIG. 1.

Prior Art.
Fig. 1 of Pake Patent No. 348,768.

FIG. 2

Prior Art.
Fig. 2 of Lemke Patent No. 392,126.
(One of the patents cited by the Examiner in the file wrapper contents.)

FIG. 3.

Prior Art.
No. 7 Mitts & Merrill Commercial Hog Slightly Enlarged.

FIG. 4.

Dittbenner Patent in Suit, Considerably Reduced in Size.

These drawings clearly demonstrate that appellee's structure differed materially from the disclosures relied upon by appellant. For example, none of the prior machines were supplied with a hopper centrally located. In each of the previous machines, the so-called anvil knife was located in the throat of the hopper. Two sections make it possible for an operator to more readily locate trouble and adjust the knives. The location of the knives in relation to each other in appellee's "hog" obtained such advantages as may be attributed to cutting as with shears over cutting by chopping or whittling. This last difference, according to the expert testimony, marked a distinct advance in this art. Appellee's machine was not, therefore, anticipated by anything disclosed by the prior art.

It is claimed, however, that by reason of a definition of the word "case," appearing in the description of appellee's patent, claims 3 and 4, above quoted, do not describe the machine that represents the advance claimed by appellee for its "hog." In the description the patentee says:

"The case of the machine is made up of a lower rectangular base section 1 and an upper semi-cylindrical section consisting of a pair of laterally spaced intermediate plates 2 and a pair of longitudinally spaced segmental doors or case sections 3, 4."

By including the lower rectangular base section in his description of the word "case," and applying such a meaning to the same word in claims 3 and 4, no advance over the prior machines was shown. In other words, appellant contends an element described as "an anvil knife supported by said case," cannot be read so as to mean "an anvil knife supported by the upper section of the case."

While it is doubtless improper to import into any combination an

element not therein found, we are justified, when the intention is clear and the language somewhat unfortunate, in giving to all modifying words and phrases a significance ascertainable only by reference to the description. In each of these claims we find the words, "in a machine of the character described," and this clause should modify (and either expand or restrict as the words and circumstances warrant) the elements enumerated in the combination which constitutes the claim. The "machine of the character described" was a sawmill "hog" that had been specifically and carefully described, with particular emphasis placed upon the location of the hopper and the anvil knives.

·The detailed drawing leaves no doubt but what the word "case," as here used refers to a part of the section inclosing the upper portion of the rotor or cutter disks. The anvil knives are supported on the sides of the anvil and the anvil is not attached to the base. The precise location of the anvil knife and the meaning which patentee had in mind when he used the word "case" is clearly disclosed by refer-· ence to the last clause of claims 3 and 4. The words in claim 3, "Said knives being arranged to pass in an angle and to cut with a drawing, shearing action substantially as described" and the words in claim 4, "and the cutting edges of which angle knives lie in a plane extending tangentially to a circle struck from the axis of said disk, whereby the said knives co-operate to cut with a drawing, shearing action, substantially as· described," make the location of the anvil knives certain and definite, irrespective ·of the detail drawings to which reference is appropriately made. Moreover, there is nothing about the use of the word "case" that would ordinarily include the base of the machine. Rather the opposite understanding would be inferable. We conclude all three claims are valid.

[3] *Noninfringement.* Appellant seeks to avoid infringement on two grounds: First, that appellee's machine is provided with three top sections, two of which are movable and one normally immovable, and containing the hopper as a part of it, while appellant's machine is provided with but two upper sections, in one of which is located the hopper. We agree with the court below "that the difference is one of form merely." Barber v. Otis Motor Sales Co., 240 Fed. 723, 728, 153 C. C. A. 521.

Appellant further contends that his machine escapes infringement because one of its case sections is not adjustable. Appellee's adjust-ment is a vertical one (see 7, Fig. 4), but the claim merely calls for adjustability. Only such adjustability as will permit the knives co-operating, so as to secure the successful drawing, shearing action, is required. Obviously a very slight adjustment is all that is necessary, and appellant's machine, being provided with a movable section, to which the anvil, bearing the anvil knives is attached, is adjustable. It matters not how the adjustment is secured—whether by the use of a simple shim or otherwise, the claim is infringed if the section is adjustable. The only testimony in the case is to the effect that appellant's machine is supplied with an adjustable case section, and with this statement we agree.

The decree is affirmed.