W. A. SCHLEIT MFG. CO., Inc., v. SYRACUSE RADIATOR CO., Inc., et al.

(Circuit Court of Appeals, Second Circuit. January 8, 1923.)

No. 118.

Patents ⬦⟜328—1,174,525, claims 1, 3, 5, for draft regulator for hot-water heaters, held valid and infringed.

> The Schleit patent, No. 1,174,525, claims 1, 3, and 5, for a draft regulator for hot-water heaters, *held* to disclose invention, and though, in view of the prior art, entitled to only a limited scope, infringed by defendant's device, which was practically a Chinese copy.

Appeal from the District Court of the United States for the Northern District of New York.

Suit in equity by the W. A. Schleit Manufacturing Company, Inc., against the Syracuse Radiator Company, Inc., and others, for infringement of a patent. Decree for plaintiff (278 Fed. 305), and defendants appeal. Affirmed.

Suit is upon patent to Schleit, 1,174,525, dated March 7, 1916, claims 1, 3 and 5. The invention claimed is for a "draft regulator for hot water heaters." Its "primary object is to utilize the temperature of the water leaving the heater ¦for regulating directly ¦a check damper and indirectly a draft damper controlling the combustion chamber." Another object is to "provide a construction having a minimum number of parts and adapted to be assembled with ease, through which any movement of the check damper beyond a predetermined point is positively and directly transferred to the draft damper."

Of the claims in suit, the second most philosophically defines the alleged invention, and the fifth most specifically conforms to the disclosure. They are as follows:

"2. A heater having a combustion chamber and a smoke chamber, a draft damper for the combustion chamber, and a check damper for the smoke chamber, means within the smoke chamber and attached to a wall thereof for transferring movement from the check damper to the draft damper in reverse form, and means for operating the check damper."

"5. In a water heater, a check damper, a draft damper, a supporting member for said draft damper, pivoted to a wall of the heater and having a lost-motion connection with said draft damper, means for operating the check damper, said supporting member being operated by the movement of the check damper to open and close the draft damper."

The trial court held the patent valid and infringed. Defendants appealed.

Parsons & Bodell and Arthur E. Parsons, all of Syracuse, N. Y., for appellants.

Eugene A. Thompson and Howard P. Denison, both of Syracuse, N. Y., for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Both parties make hot-water heaters, and each has attached to its product an automatic regulation for draft. The patent relates to the method of regulation. The heaters of both parties show a combustion chamber within a water jacket, and in each it is the heat of the water which furnishes the power for automatic regulation. The patent relates solely to the means of using this power to maintain predetermined rela-

tion between the draft damper (at the opening from combustion chamber to smoke chamber) and a check damper or hinged door opening from the smoke chamber to the outer air.

Automatic and thermostatic regulation is admittedly not new in the art of heating, and this patent does not pretend to be a pioneer. The concept is a narrow one, and covers only means attached to a wall of the heater (including the smoke chamber) for transferring from the damper under thermostatic regulation to the other damper the impetus or power of its own movement. The beneficial results are mechanical simplicity, compactness, and a minimum exposure of working parts to the ordinary furnace attendant, for whose benefit mechanical devices of this kind are preferably "fool-proof."

The patentee's method of transmitting thermostatic movement is extremely simple. As the water heat varies above or below the predetermined temperature, the movement of the thermostat is transmitted by a link and lever device to the check damper, which, when closed, rests against one end of a lost-motion device pivoted to the wall of the smoke chamber, and the pressure of such resting lifts from its seat the draft damper. With the draft on, temperature rises and the operation is reversed; i. e., the check damper is lifted, and, its pressure being absent from the end of the lost-motion apparatus, the draft damper reseats itself by gravity. Nothing is outside the metal heater, except the one thing that requires regulation; i. e., the thermostat and its connecting lever.

The prior art shows no utilization for the purposes above set forth of this simple contrivance, hidden in the smoke chamber and attached to the wall thereof, whereby a connection is maintained automatically between the opening and closing of check and draft dampers. It would serve no useful purpose to compare the structure of defendant with that of plaintiff. Suffice to say that we regard them as mechanically exactly alike, and especially has the defendant copied plaintiff's attachment to the interior wall of the smoke chamber of the lost-motion device, which is the connection between draft and check dampers.

The defense in this court is that defendant's regulator "is the prior regulator of Roney patent No. 893,874." We fail to see any real or patentable resemblance between Roney and defendant. That patentee, like many others, does show a "damper regulator," and also a connection between two objects, one of which is certainly a damper, and the other a valve "in the cold air flue"; and it is true that a movement of said valve compels movement of the draft damper, but it is not a lost-motion movement, and it is not situated and does not take place in anything that can fairly be called a smoke chamber. Of course, all the mechanical parts, whether put together by plaintiff, defendant, or Roney, are old, and it is the form of their union and the method of their co-ordination which is the essence of this small invention. The method, purpose, and result of Roney's regulation are all different from that desired by the parties to this suit. What Roney wished was to establish by hand, and from a considerable distance, a simultaneous opening or closing of an old-fashioned draft door at the base of his furnace and the chimney damper at its exit. This is a wholly different thing from

what the parties hereto desire and achieve. Roney's patent (not to speak of many others) suffices to keep within narrow limits modern inventions about draft regulation. This patent is narrow; it covers nothing but the means of accomplishing a result which has been accomplished in many other ways. Its range of equivalents is small, but wide enough to cover what is practically a "Chinese copy."

Decree affirmed, with costs.