## LINE MATERIAL CO. v. BRADY ELECTRIC MFG. CO.

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 275.

**1. Patents ☞16, 37—Advantages and success held to indicate novelty and invention.**

That insulator fixture in suit is smaller and costs less to manufacture than devices theretofore used, is easier to attach and reduces liability of breakage of attached electric wire to minimum, and has been successfully received in trade, *held* to indicate novelty and invention.

**2. Patents ☞328—930,527, for automatically adjustable insulator house fixture, held valid and infringed.**

Burge patent, No. 930,527, for an automatically adjustable insulator house fixture, used in connection with the transmission of electrical energy for lighting, telephone, and power requirements, *held* valid and infringed.

**3. Patents ☞66—What acts do not constitute "anticipation" stated.**

"Anticipation" cannot be made out by selecting parts of one patent and part of another, and still a part of a third, to build up a hypothetical construction, which may answer the combination of the claims of the patent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

**4. Patents ☞25—"Aggregation" defined.**

"Aggregation" means that the elements of a claimed combination are incapable of co-operation to produce a unitary result, and in its true sense does not need prior art patents to support it, because obviously, if there is no co-operation between the parts, as claimed, there is no patentable combination.

[Ed. Note.—For other definitions, see Words and Phrases, Aggregation.]

**5. Patents ☞236—Making element of two separate pieces, rather than a single piece, does not avoid infringement, where the two separate pieces performed the same function as a single piece.**

Making an element of two separate pieces, rather than a single piece, does not avoid infringement, where the two separate pieces perform the same function as a single piece; nor does the use of a single screw for attaching the device, in place of two or more, repel the charge of infringement.

Appeal from the District Court of the United States for the District of Connecticut.

Suit by the Line Material Company against the Brady Electric Manufacturing Company for infringement of letters patent No. 930,527. Decree for plaintiff (299 F. 822), and defendant appeals. Affirmed.

George W. Brady, of New Britain, Conn., and John W. Joy, of Hartford, Conn., for appellant.

Louis O. French and Louis Quarles, both of Milwaukee, Wis., and Bristol & White, of New Haven, Conn., for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The Burge patent, No. 930,527, was issued August 10, 1909, on an application filed March 17, 1909, and is for an automatically adjustable insulator house fixture. The transmission of electrical energy for lighting, telephone, and power requirements is in great part conveyed by overhead service lines. At intervals, these lines are tapped by feed lines leading to the house or building to be supplied with current. This is accomplished by a service line to the house or building, and requires a fixture to be attached to the building. Under the patent in suit, a new device is provided for attachment to the house. Fixtures for such purpose must be able to withstand severe strain, because the drop wire spans are sometimes of considerable length, so that the weight of the wire line is considerable, and it is further increased when coated with snow, sleet, or ice, and such fixtures must be able to withstand the stresses thus encountered, and the connection between the fixtures and the house must be such as to reduce the strain on the fastening means. It is necessary that the fixture should take care of insulated wires generally, so as to prevent the danger of damage to the wire itself, and yet permit of a relatively loose swinging wire to relieve the wire of internal stresses, to which it would be subject were it drawn up taut.

Before the appearance of the device made under the patent in suit, insulator brackets were of the fixed type and had been long in use. The so-called fixed type theretofore used in the art was a rigid wooden bracket, with insulator or a bracket made with malleable iron. In such type, the wear due to the swinging of the wire had to be taken at the point of attachment of the wire to the insulator, sometimes causing snapping and breaking of the wire at this point, and, since the insulator was fixed or unadjustable in many instances, the strain produced upon the bracket by the wire, weighted with snow, sleet, or ice, would cause the bracket to be torn from the house or support, or to break off near its point of connection with the house or other support.

The patent in suit provides for a structure which embodies a plate provided with an eye to receive a clevis, the plate having holes

in it for the reception of screws, whereby the device is readily attached to a building or other support. The clevis is mounted to swing relative to the plate, thus giving a universal joint connection between the clevis and the eye. A notch is provided in the clevis, so as to furnish a centering point, and thereby keep the clevis aligned with the line of strain. The insulator, having a circumferential groove to which the line wire is attached, is pivotally mounted upon a pin carried by the clevis, which swings on the eye, and by this pivotal mounting, instead of the wire turning on the insulator, and wearing, the insulator turns relative to its support. Since this clevis is capable of swinging, and permitting the insulator to swing into the line of the strain, when the wire is swayed by the wind, this movement is transmitted from the insulator to the universal joint connection between the clevis and the eye, so that the wear, due to the whipping of the relatively loose span wire in the wind, is taken on the metal parts, instead of by the wire.

[1, 2] There are two claims in suit. The second is distinguished from the first, in that it defines a central notch in the crotch of the clevis on the eye of the plate or connection member. The device has been successfully received in the trade. It is stronger, smaller, and costs less to manufacture than the devices theretofore used. The liability of the wire breaking is reduced to a minimum, and it is easier to put up. These advantages indicate novelty and invention. Brunswick v. Thum, 111 F. 904, 50 C. C. A. 61; Miehle Co. v. Whitlock Co., 223 F. 647, 139 C. C. A. 201; Schleit v. Syracuse (C. C. A.) 288 F. 52.

The old type of bracket, rigidly attached, made the pull invariably at an angle from the means of attaching the base to the building, and the further the point of attachment of the service wire from the base plate, the greater the leverage, and consequently the more easily it is pulled off the building. With the Burge type of attachment, the point of pull is practically at the base plate, and the leverage is very greatly reduced. The need for a device of the kind shown in the patent grew out of the fact that the rigid support was quite expensive, and the wires were supported absolutely rigidly, and there was a tendency for the wires to break where they were attached to this rigid support. This is overcome by the new device, for it allows the wires to be attached to the building by means of a flexible connection,

so that the strain of swinging wires is taken up by the device, instead of by the wires themselves. With its welcomed reception by the men of long practical experience in this material art, who recognize its distinct advantages, we think it exhibited inventive thought to bring out this improvement over the prior art.

We are, however, referred to prior patents, which, it is claimed, either anticipate or limit the scope of what the patentee accomplished. The patent to Whitcomb & Paddock, No. 43,541, was used in connection with the pull on a horse hay fork. It may be described as a tackle block, in which the pulley wheel is mounted on the axis in the block, and the block having a swivel connection with the swivel eye. The feature of this invention over the usual pulley block was the particular form of swivel effected by the upsetting of the inner end within a hole provided in the block, but it has no pertinency to the patent in suit. It was never intended or designed to take a service wire at the house end of a drop, nor is it associated with the means for connecting it to a house. The insulator of the patent in suit does not perform the same function as the pulley. The insulator and the wire are rigidly attached together, for the wire is dead-ended at the spool.

The Rodenhausen patent, No. 98,418, shows two U-shaped parts for use as couplings to connect the springs of carriages. This patent is cited to show that clevices were old, but the question here presented does not involve the patentability of clevices per se.

The patent to Brady, No. 453,036, shows a socket piece with a flange provided with screw holes to facilitate fastening the device in place. The end of the arm is adapted to be inserted in any one of several holes in the socket, whereby the bracket may be adjusted to different angular positions. When in adjusted position, it is securely locked in place and to the socket by a set screw. The patentee points out that, for the purpose of preventing the arm from turning in the socket, a spline and groove or other known equivalent may be employed for the square form, and that, after the arm is placed in the socket piece, the set screw is tightened to secure the arm in place. It is apparent that it was never intended to have the arm swing relative to the bracket, but was attached to the socket piece, so that the device would act in the usual manner of a fixed bracket. The Brady patent describes a sis-

ter hook construction, consisting of sister hooks pivoted, and the novel feature of the invention is the use of a ring pivot to hold the hooks together. There is no insulator shown, nor is it associated with a clevis, and no means for connecting a clevis to the side of the house.

[3] The patents to Lien, No. 454,486, and Elliott, No. 476,193, we think, are not indicative of any prior conception. None of these anticipated the combination of elements as found in the Burge claims. They were never designed or intended for use, nor could they be used, in connection with long wires at the drop end of the building. They do not anticipate the patent in suit. Topliff, v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658; Smith v. Peck, etc. (C. C. A.) 262 F. 415. Anticipation cannot be made out by selecting part of one patent and part of another, and still a part of a third, to build up a hypothetical construction, which may answer the combination of the claims of the patent (Barber v. Otis Motor Sales, 240 F. 726, 153 C. C. A. 521.

Prior use is referred to in the ship chandlery art, but this is not an art analogous to the art in which the patentee was working, and the devices referred to could not, without modification, be made to accomplish the function and purpose this inventor had in mind. They lack certain of the essential elements of the patent in suit. None of the devices were ever intended, nor could they be used, for accomplishing the functions of the Burge invention. What was accomplished is not a mere juxtaposition of elements, but it is a co-operative arrangement of elements, so as to bring about a new and useful result over the fixed type of rigid bracket with insulator, and what has been accomplished has been due to this novel combination.

[4] Nor may it be successfully argued that what the patentee did was a mere aggregation. Aggregation means that the elements of a claimed combination are incapable of co-operation to produce a unitary result, and in its true sense does not need prior art patents to support it, because obviously, if there is no co-operation between the parts, as claimed, there is no patentable combination. The argument here is that the elements of the patent in suit are separately laid in the different patents, and that, this being so, there was no invention in bringing these elements together in the claimed combination. Where patents have failed because of aggregation, the controlling factor has been that there was no combination in fact. But, in the structure made under the patent here, there was a new combination of elements, all of which co-operate when the device is in service. The plate forms a connection between the clevis and its fastening means, and, if it were left off, there would be no connection for the clevis with the house, and no means of relieving the fastening means of strain. The clevis in turn forms a support for the pin on which the insulator is mounted, and, were it left out, the insulator would not swing or turn. The plate, clevis, and pin all co-operate to form a supporting means for the insulator, of such a character that the insulator can move into the line of strain, and can move relative to its supporting pin to relieve the wire of wear. It further relieves of wear, by the taking up of the wear between the clevis and the eye, and the pull of the wire is transmitted to the plate in such a way as to relieve the supporting means and the fastening means of objectionable strains. Nothing in the disclosures of the prior patent shows contemplation of any such co-operation of other elements.

We do not think the line conductor supports referred to in General El. Co. v. Ohio Co. (C. C. A.) 277 F. 917, in any way changes this result. The devices there shown are not of the type of this invention. The line wires are not dead-ended on the insulators, and the insulators are connected together by flexible cables, and the anchorages are different. The patents involved in that case were not offered in evidence, nor considered by the court below.

The appellant, in its device, provides for sister hooks in constructing its clevis, and it appears that a single screw will hold the devices of the patent in suit. The claims of the patent in suit do not include two screws, but simply state that the plate has holes or slots suitable for the reception of screws. Infringement cannot be evaded by the use of a single screw for attaching the plate, since the sheet metal plate is equivalent to the plate specified in the claim. The file wrapper indicates that the allowance of the claims here in suit did not depend upon any essential inclusion of a plurality of holes. When the two sister hooks are connected in assembled relation relative to the plate of the defendant's device, they function together and then act as a clevis.

[5] Infringement is not avoided by making an element of two separate pieces, rather than a single piece, where the two sepa-

rate pieces perform the same function as a single device. Pedersen v. Dundon, 220 F. 309, 136 C. C. A. 143; Barber v. Otis Motor Sales, 240 F. 723, 153 C. C. A. 521. The appellant's device has all the elements of the claim of the patent in suit. The minor changes in the form of the clevis and the plate are fully within their scope, having taken all the essential elements operating in the same way for the special purpose to accomplish the same result, and infringement is clear. Machine. Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Cantrell v. Wallick, 117 U. S. 689, 6 S. Ct. 970, 29 L. Ed. 1017.

Decree affirmed.