## TEIGEN et al. v. UNITED CIGAR STORES CO. OF AMERICA, OF NEW JERSEY.

### No. 9349.

Circuit Court of Appeals, Eighth Circuit.

Nov. 9, 1932.

Oscar Hallam, of St. Paul, Minn. (Howard L. Fischer and Richard A. Golling, both of St. Paul, Minn., on the brief), for appellants.

F. C. Caswell, of Minneapolis, Minn. (Fritz v. Briesen, of New York City, on the brief), for appellee.

Before STONE, KENYON, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellant Austin F. Teigen is the patentee in letters patent No. 1,554,898 for a "Tobacco Pipe," issued September 22, 1925. Subsequently he assigned a one-fourth interest therein to appellant Bosshard. September 12, 1928, appellants brought suit against appellee charging infringement of this patent, praying injunction, accounting, and damages. The answer denied infringement, and charged anticipation and resulting invalidity. The District Court found the patent in suit valid, but not infringed, and entered a decree dismissing the suit for want of equity.

The patent contains but two claims, the first of which, only, is involved. It reads as follows: "A smoke clarifying unit having an outer tubular member adapted to be interposed between the bowl and mouthpiece of a tobacco pipe, a separate core member removably held within said tubular member and having the end thereof adjacent said bowl disposed entirely within said tubular member, means for spacing said core member from said tubular member in a manner to form a thin annular passageway about said core member and said core member having passageways connecting said annular passageway with the bowl and mouthpiece of the pipe."

In his specification the inventor says: "My invention relates to tobacco pipes, and is particularly adapted to means for clarifying tobacco smoke before it is inhaled or drawn into the mouth of the smoker." The object is to reduce, by means of an attachment adapted to a tobacco pipe of any nature, the amount of the nicotine carried in the smoke. The invention is further described in the specification thus: "My attachment for a tobacco pipe is provided with means whereby it can be readily and quickly taken apart and cleaned thoroughly so that the pipe can be kept fresh and in condition to be used without having any undesirable sourness or nicotine effect in smoking. It is a particular advantage of the invention to provide separable parts which can be removed from the pipe collectively or selectively when desired."

It is this "attachment," described as "a smoke clarifying unit," that forms the subject-matter of claim 1. Described as "having an outer tubular member adapted to be interposed between the bowl and mouthpiece of a tobacco pipe," and susceptible of being "removed from the pipe collectively or selectively when desired" to facilitate cleaning, it is evident that the attachment must form

one distinct part of a three-piece pipe, as more fully described in claim 2. To discharge its functions as specified, it must be readily detachable from both mouthpiece and bowl; this being true, it is difficult to perceive how this claim can be construed to cover two piece pipes, such as are shown in a number of prior patents, and in appellee's device.

Ordinarily, "in determining whether a subsequent device infringes, it is unimportant whether it is made in two pieces instead of three, or whether a member is mechanically attached to the remainder of the structure or is made integral with it." Citing cases, to which may be added, Nathan v. Howard (C. C. A. 6) 143 F. 889; Barber v. Otis Motor Sales Co. (C. C. A. 2) 240 F. 723; and Line Material Co. v. Brady Electric Mfg. Co. (C. C. A. 2) 7 F.(2d) 48. "They [the cases cited] are, however, inapplicable to a case in which the very divisibility into parts or in which the particular method of attachment constitutes the law of the structure or is declared or appears to be of the essence of the supposed invention." Dunlap v. Willbrandt Surgical Mfg. Co. (C. C. A. 8) 151 F. 223, 226. That such is the nature of the attachment, "or smoke clarifying unit," appears from specification, claim, and file wrapper and contents. Seven claims originally submitted had twice been rejected in the Patent Office by the examiner in charge. Canceling these and replacing them with the two claims of the patent in suit, the patentee said: "The new claims submitted distinguish over the references of record in that they call for a separate core member removably held within the stem or tubular member and is spaced from said stem or tubular member so as to form an annular passageway between the core member and the stem or tubular member. In addition these claims set forth that the core member at the end adjacent to the bowl of the pipe terminates at a point entirely within the stem or core member."

This clarifying unit embraces three elements or members: (a) An outer tubular member; (b) a separate core member removably held within said tubular member; (c) means for spacing said core member from said tubular member to form a thin annular passageway about said core member, this core member having passageways connecting the annular passageway with the bowl and mouthpiece of the pipe. The means for spacing the core member from the tubular member, to form the annular passageway about said core member consist of enlarged or flanged portions positioned short distances from either end of said core member.

The outer tubular member, forming the stem of the pipe, is, of course, old—likewise the mouthpiece and bowl, common to all pipes. A great many prior patents were introduced by appellee, and are found in the record. All have the same object of producing a cooler, cleaner smoke, and of preventing surplus nicotine and moisture from reaching the mouth of the smoker. Their devices consist, in the main, of tubular members, core members, and annular passageways, and of disks, flanges, or balls, constituting means for spacing the core members from the tubular members in a manner to form annular passageways. Among those patents disclosing separable core members in combination are Smart (British) 1879, Lake (British) 1888, Briggs (British) 1890, Osborne (British) 1890, Schossow (United States) 1899, Addison (British) 1906, Plane (United States) 1908, and Sasieni (British) 1920.

A number of patents disclose a core permanently attached to the mouthpiece as in appellee's device. Among patented devices employing annular passageways for the purpose of clarifying and cooling tobacco smoke, in combination with tubular and core members, are Reeve (British) 1887, Lake (British) 1888, Kevis (British) 1889, Clarke (British) 1890, Osborne (British) 1890, Chorley (British) 1890, Addison (British) 1906, Dingle and Urquhart (British) 1908, Young (British) 1912, and Sasieni (British) 1920.

In these various devices the annular passages are not uniform as to number, shape, length, and thickness, but they discharge the same general function in combination with other elements, and a mere change of proportion is insufficient to impart patentable novelty and invention. In all these patented devices the smoke is interrupted in its passage from bowl to mouthpiece by being diverted into annular passageways, or chambers, where it is retarded, clarified, and cooled. It enters these chambers through apertures usually bored through enlargements at that end of the core adjacent to the bowl, and is drawn out of the chambers through a hole or holes bored through the enlarged end of the core which fits into the mouthpiece. These holes or apertures differ in number and location in the several patents in this crowded art; the chambers differ also in number, size, and shape, but the operative principle is the same, and the variations in the respects mentioned are, for the most part, matters of mere mechanical ingenuity as distinguished from invention. The Sasieni patent, to which reference has been made, is il-

lustrative as bearing upon the patent in suit. This is exceedingly well stated in the opinion of Judge Sanborn, who decided the case below (1 F. Supp. 921):

"There can be no doubt that Mr. Teigen's invention came into a very crowded and ancient art. There was nothing new in a tubular member for a tobacco pipe, which is commonly called the stem. There was nothing new in a separate core member removably held within the stem of a pipe, with means for spacing the core member from the walls of the tubular member so as to form an annular passageway about the core member, the core member having passageways connecting the annular passageway with the bowl and mouthpiece. This is illustrated by the following patents:

"British Patent to Young, 1912;

"British Patent to Addison, 1907;

"British Patent to Kevis, 1889;

"British Patent to Sasieni, 1920;

"British Patent to Smart, 1879;

"British Patent to Dingle and Urquhart, 1908.

"To my mind, the accused pipe of the defendant is almost an exact replica of the Sasieni pipe. The only distinction is that the inside diameter of the stem of the Sasieni pipe is not the same throughout its length, and is narrower at the point where the end of the Sasieni core member is held when the mouthpiece is in place. However, it would certainly not constitute invention to enlarge that part of the interior of the stem of Sasieni and to enlarge the end of the core member. If this action were brought upon the Sasieni patent, assuming that patent to be valid, there would be, in my mind, no doubt that the pipe of the defendant was an infringement of that patent. That being true, the defendant's pipe could not be an infringement of the patent in suit. * * *

"My conclusion is that if Claim 1 of the Teigen patent be construed in the manner contended for by the plaintiffs, it is void for lack of invention. It is not necessary to construe it in that way, and, while I consider that, in view of the prior art, it is very doubtful whether the claim has any validity, it is not necessary to hold it invalid in this suit, since the device of the defendant does not constitute an infringement of it.

"I find that the plaintiffs are the owners of the patent referred to; that it is a valid patent, but is limited by the prior art; that, as limited by the prior art, Claim 1 is not infringed by the pipes manufactured and sold by the defendant, complained of in this suit."

In brief and argument counsel for appellants place great emphasis upon the fact that the disk at the end of the core near the bowl acts as a cleaner by scraping the sides of the chamber as and when the core is removed. They charge that the ball, which takes the place of the disk in appellee's device, performs this same office. They also seek to differentiate the Sasieni patent thus: "There is the means of spacing, but, the tube being of varying size, the small end of the core (in the Sasieni device) serves no purpose of cleaning the tube."

A complete answer to this point is that neither in specification nor claim is this function of the disk described or counted upon as a feature of appellant's device. All that is said, as quoted above, is that the attachment "can be readily and quickly taken apart and cleaned thoroughly." As appears from the file wrapper and contents, appellant's patent was granted, after two rejections, upon numerous references to the prior art, solely upon the consideration that the new claims call for a *separate* core member, *removably* held within the stem or tubular member, and terminating within the stem. We agree with the trial judge that it is very doubtful whether the claim in suit has any validity, but are content, with him, to rest the decision upon the finding that, "as limited by the prior art, claim 1 is not infringed by the pipes manufactured and sold by the defendant, complained of in this suit."

The decree below is affirmed.