KELLETT AUTOGIRO CORPORATION et al. v. BROHAN.

SAME v. JAMES.

Nos. 5636, 5638.

District Court, D. New Jersey.

July 12, 1938.

Starr, Summerill & Lloyd, of Camden, N. J. (Leonard L. Kalish, of Philadelphia, Pa., of counsel), for plaintiff.

Minton & Rogers, of Trenton, N. J. (John M. Cole, of New York City, of counsel), for defendants.

FORMAN, District Judge.

The patents in suit relate to advertising matter inscribed upon banners towed through the air by flying machines. The plaintiff's invention involves generally a rectangular banner, means to hold the banner in a stable and vertical plane so that the readability of the advertisement may be facilitated, and a cable leading from the nether surface of the flying machine which tows the banner through the sky. The front end of the sheet or banner is held vertically erect by the use of a stretcher bar. The bottom part of this bar contains a weight which prevents the banner from flying upside down. From the top and bottom of the stretcher bar ropes lead to a common point, forming an isosceles triangle. A single cable serves as a connection between this common point and the flying machine.

The two cases were consolidated for trial. Each of the defendants is charged with infringement of claims 2 and 3 of Bleriot patent No. 1,727,095 which provide for the following:

"2. A device of the class described comprising a flying machine, a sheet, a single cable connected to and extending from under the center of gravity of the flying machine for towing said sheet, and means for connecting said cable and said sheet and for holding the sheet in extended position.

"3. A device of the class described comprising a flying machine, a sheet, a single cable connected to and extending from under the center of gravity of the flying machine for towing said sheet, means for connecting said cable and said sheet and for holding the sheet in extended position, and a stabilizing element connected to said sheet and serving to control the movement of said sheet in flight."

and claim 9 of Bleriot patent No. 1,794,828 which contains the following provisions:

"9. In combination with a flying machine, a bar, a banner attached to said bar, a single cable connected at one end to said machine, flexible members connecting the other end of said cable to the bar, and means operative to swing said banner and bar into a vertical plane when said banner is towed behind the flying machine."

The first objection interposed by defendants concerns the connection point of the towing cable to the flying machine, and the relevant portions of claims 2 and 3 of Bleriot patent No. 1,727,095 are as follows: "a single cable connected to and extending from under the center of gravity of the flying machine for towing said sheet". The contention is that this claim is void, because it is vague, indefinite and beyond the disclosure of the specifications. Plaintiff argues that this language means that the cable is connected to the flying machine,

and extends from under its center of gravity. Defendants urge that the language means that the cable is connected to the center of gravity, and extends from under the center of gravity of the flying machine. Considerable testimony was adduced by defendants indicating that they do not attach a cable to the center of gravity of a flying machine, and that the cable did not pass a point vertically below the center of gravity of a flying machine. Evidence was also offered showing that the center of gravity is a theoretical point which vacillates according to the weight and maneuvers of the flying machine.

■ It would be impracticable and almost an impossibility to attach the cable to the "center of gravity". The language of a patent should not be construed to mean an impossibility. This is especially true where the vitality of the patent, and its infringement depend upon such construction. And the courts have so held.

■ "A patent should be construed in a liberal spirit, to sustain the just claims of the inventor. This principle is not to be carried so far as to exclude what is in it, or to interpolate anything which it does not contain. But liberality, rather than strictness, should prevail where the fate of the patent is involved, and the question to be decided is whether the inventor shall hold or lose the fruits of his genius and his labors." Providence Rubber Co. v. Goodyear, 76 U.S. 788, 795, 9 Wall. 788, 795, 19 L.Ed. 566.

Defendants' own expert witness admitted that the claim could be easily read in accordance with the construction urged by plaintiff by the addition of only two commas. So punctuated the claim would read as follows: "a single cable connected to, and extending from under the center of gravity of, the flying machine". Such a construction is a reasonable one in view of the fact that any other construction would mean virtually an impossibility.

But even as thus construed the defendants contend that their cable does not pass vertically below the center of gravity of the flying machine, and hence the defendants do not infringe.

In the case of Adam v. Folger, 7 Cir., 120 F. 260, the claim was expressly limited, inter alia, to the location of a certain supplemental regulating valve "in the plug of the main valve". In the defendant's structure this was not so located. The court stated:

"But location was not of the essence of Folger's conception as above described. Nor was location, by reason of the state of the art as disclosed by this record, indispensable to the novelty of the claim. * * * His contribution to the art did not consist in improving the form or location or sequence of elements in an existing combination, but in taking and combining the elements to produce a new result. He is entitled to an application of the doctrine of equivalents in proportion to the scope of his invention. * * * To construe his statement of location as essential, and not merely descriptive, would ignore the nature of the invention, and deprive him of the benefits of equivalency." 120 F. 260, 263.

This case was followed in the recent case of U. S. Ozone Co. v. U. S. Ozone Co., 7 Cir., 62 F.2d 881, 889, wherein it is cited as authority for the proposition that the "law is clear that the change of location of an element in a combination, if the function remains the same, will not avoid infringement".

In the case at bar the precise point on the flying machine where the cable is attached is not the essence of plaintiff's claim. It would be absurd to hold that the defendants can avoid infringement by merely moving the point of attachment a few inches on the nether surface of the flying machine just to avoid coming within the area vertically below the center of gravity.

Defendants' next objection is that claim 3 in Bleriot patent No. 1,727,095 is void as an aggregation. In support of this it is contended that there is no interrelation between the stabilizing element and the point of connection of the cable to the plane.

The case of Lincoln Engineering Co. v. Stewart-Warner Corp., 58 S.Ct. 662, 82 L. Ed. 1008, is cited to substantiate the assertion that the patent herein involved is void as an aggregation. In that case the patentee invented an improved hose-coupler for use in effecting a quick attaching and detaching connection between the hose leading from any pump to a grease-cup on the bearing of an automobile. The patentee not only included within his claims the devices used for emitting the grease, but also included the receiving device or grease-cup. The grease-cup was old art, and the only invention over the prior art was in the emitting device of the patentee. The court

stated: "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination." 58 S.Ct. 662, 664, 82 L.Ed. 1008.

In the case just cited the grease-cup on the automobile was totally disassociated from, and in no way affected the operation of the internal parts of the improved coupler. The relationship between the improved coupler and the old grease-cup is comparable to the relationship between a screw driver and a screw. Obviously, the inventor of an improved screw driver which could be used on old-fashioned screws, regardless of how ingenious an invention he may have made in the construction or mechanism of the screw driver, could not have a monopoly on the old-fashioned screws. The case, therefore, is irrelevant. Here, the stabilizer is directly connected with and modifies the operation of all the other elements, for without the stabilizer the elements become unmanageable in actual flight.

Defendants attempt to differentiate the banner used by them from the banner referred to in plaintiff's claim. It is contended that this claim has reference to a continuous sheet, and that defendants do not use such, but use a sheet from which everything but the letters are cut out. The argument is without merit. Defendants accomplish the same purpose as plaintiff regardless of the form of the sheet or banner. It is a well-established rule that infringement is not avoided by merely dividing an element of the patented structure into two or more parts while performing the same function.

In Barber v. Otis Motor Sales Co., 2 Cir., 240 F. 723, 728, the court stated:

"We agree with the Circuit Court of Appeals in the Sixth Circuit when it said, speaking through Judge Lurton in Nathan v. Howard (1906) 143 F. 889, 893, 75 C.C. A. 97, 101, that:

" 'Neither the joinder of two elements into one integral part accomplishing the purpose of both and no more, nor the separation of one integral part into two, together doing precisely or substantially what was done by the single element, will evade a charge of infringement.' "

The next contention relates to claim 9 of Bleriot patent No. 1,794,828. Defendants state that the gist of this claim is the "means operative to *swing* the bar and banner into a vertical plane when the banner is towed behind a flying machine". Other sections of the patent are adverted to and defendants conclude that this claim relates to turning or swinging into a vertical plane a sheet or banner which was rolled up and released from the flying machine while in flight. This procedure is differentiated from defendants' method by reason of the fact that defendants' banner is not released from the flying machine while in flight, but is picked up from the ground, the banner being in a vertical position as it leaves the ground. Concisely, plaintiff swings its banner into a vertical plane. Defendants' banner is already in a vertical plane. This contention is also without substance. The same purpose is accomplished whether the banner is swung into position, or maintained in its original position.

Finally, defendants contend that the patents involved are anticipated or add nothing to the prior art on the subject. Defendants have introduced evidence that the art of aerial advertising was practiced long before plaintiff's device was patented. Defendants have shown that advertising banners have been elevated by kites, balloons and dirigibles. In these cases with one exception control of the kite or balloon was exercised from land. In the excepted case the advertising banner partly encircled and was attached to a dirigible. Defendants have not produced prior art indicating that an advertising banner maintained in a vertical position was ever towed by an airplane before the issuance of plaintiff's patent. To meet the deficiency in this respect defendants have drawn analogies between towing advertising banners and objects used in target practice in war maneuvers. In fact, defendants have shown that such objects as gliders, mail and food supplies have been towed by aircraft. The fact that such has been done does not convince the court that plaintiff's patent has been anticipated or that plaintiff has contributed nothing to the prior art.

The only prior patents which have even the slightest resemblance to the patent in issue are the Finlay patent and the patents

of the aerial target devices of which the Lamkey patent is illustrative.

In the Finlay patent several kites are elevated, and between them the ends of a rectangular advertising banner is attached. At each end of the banner there is a rigid bar, and converging from this bar to a common point are three flexible lines. At the confluence of the three lines the lines leading to the kites begin. The only relevancy that this patent possesses is in the method in which the three lines run from the rigid bar to the common point. It is contended that this arrangement stabilizes the banner so that it will remain in a vertical position. If that is true it would follow that the stabilizing device used by the plaintiff has been anticipated. The three lines in the Finley case come together as follows: The line leading from the top of the banner goes to the common point hereinbefore mentioned, and with the rigid bar forms a right angle. The line leading from the bottom of the banner joins at the common point and would be the hypothenuse. The third line leads from the center of the rigid bar to the confluence. In the case at bar there are also three lines leading from the rigid bar to a common point. But here an isosceles triangle is formed with the third line bisecting.

The court is not convinced that the manner in which the three lines converge in the Finlay patent produces an effective stabilizing agency. In fact, there was persuasive testimony that the banner in the Finlay patent would develop unstable tendencies and corkscrew. At any rate the banner in the Finlay patent was never intended to be towed in flight as in this case. Furthermore, the plaintiff not only made a different angle out of the three lines leading from the rigid bar, but added a weight to one end of the bar in order to insure stability.

As an introduction to the patents relating to aerial targets it is significant to observe that the purposes of aerial targets and advertising banners are in diametrical conflict. The aerial target is supposed to represent enemy aircraft. To obtain efficacy it must be obscure and elusive. In the case of aerial advertising, the banner must captivate the attention of the onlooker and must necessarily be obvious and conspicuous.

There is ample testimony that none of the target devices could compete with plaintiff's advertising device. This is due to the instability of the target.

The Lamkey patent shows a rectangular banner used as a target towed by a flying machine. There is no rigid bar at the front end of the banner as described in the Finlay patent or as in the patent in suit. There are, however, lines running from the top and bottom of the banner to a common point where the towing cable is connected, with two other lines splitting the angle thus formed. It thus appears that this patent involves nothing but a flexible rectangular banner connected to a towing cable. It is destitute of any stabilizing element, and cannot be said to anticipate the patent in suit.

The court is of the opinion that the plaintiff's patent is valid and infringed. An order may be taken in accordance with the views herein expressed.

The relief prayed for in defendants' counterclaims have been denied in the main actions, and the same are dismissed.

This memorandum is designed to meet the requirements of Equity Rule 70½, 28 U.S.C.A. following section 723, with regard to the filing of findings of fact and conclusions of law.