## SIMPLEX PISTON RING CO. OF AMERICA, Inc., v. HAMILTON.

District Court, E. D. New York, August 6, 1927.

No. 2871.

**1. Patents ⊛328—No. 1,601,575, for piston packing, held valid and infringed.**

Marshall patent, No. 1,601,575, for piston packing, *held* not anticipated, valid, and infringed.

**2. Patents ⊛112(4)—Allowance of patent over references cited greatly strengthens presumption of validity.**

Allowance of patent over references cited greatly strengthens presumption of validity as against claim that they anticipate.

**3. Patents ⊛65—Foreign patent, cited as anticipation, must be taken for exactly what it shows on its face.**

Foreign patent, cited as anticipation, must be taken for exactly what it shows on its face.

**4. Patents ⊛239—Infringement is not avoided by making two separate pieces perform function of one in patented device.**

Infringement is not avoided by making two separate pieces perform the function of one in the patented device.

In Equity. Suit by the Simplex Piston Ring Company of America, Incorporated, against Arden L. Hamilton, doing business as the Hamilton Motor Parts Company. Decree for complainant.

Gifford & Scull, of New York City (A. C. Paul, of Minneapolis, Minn., C. B. Belknap, of Detroit, Mich., and Newton A. Burgess, of New York City, of counsel), for plaintiff.

Seward Davis, of New York City (George K. Helbert and Frederick A. Blount, both of Philadelphia, Pa., of counsel), for defendant.

CAMPBELL, District Judge. This is a suit in equity to obtain relief by injunction and to recover damages for the alleged infringement by the defendant of United States letters patent No. 1,601,575, issued to Lewis C. Marshall, assignor by mesne assignments to the Simplex Piston Ring Company of America, for piston packing, dated September 28, 1926.

The defendant is doing business in this district under the name and style of Hamilton Motor Parts Company. The defense was taken over and paid for by the Joe Jackson Motor Parts Company, of Philadelphia, Pa. The defenses are invalidity and noninfringement.

[1] The patent relates to piston packing rings, "more particularly split metallic rings of the type employed in connection with the pistons of internal combustion engines." The problem which confronted the patentee, in so far as we are at present concerned, was to produce a ring that could be snapped over and peripherally inserted into a fixed groove of the piston of an internal combustion engine, and which would give axial pressure against the side walls of the groove, and at the same time would have this axial pressure so limited that the ring could move radially in the groove.

The solution of this problem was rendered difficult by reason of the high pressure and temperature of an internal combustion engine, and the distortion of the cylinder by the expansion of the upper end of the cylinder under heat, so that the cylinder in effect becomes a frusto cone rather than a cylinder, and that the piston ring, when used in such an engine, must be free to follow out to the cylinder walls with each stroke of the piston, or, as it is called, "breathe" outward and inward once, for each stroke of the piston, which movement at normal high-running speeds of automobile engines must be made in approximately 1/80 of a second.

The ring of the patent in suit, which the plaintiff contends solved the problem, in structure consists of a trans-split ring (transversely split on one side to permit of radial expansion), which is originally of a width somewhat greater than the width of the ring groove, but which is circumferentially slotted to render it axially compressible. These slots extend circumferentially of the ring and are in two series; the individual slots being limited in length to only a segment of the circle and separated from the adjacent slot by an uncut portion of the ring.

This action is based upon all six claims of the patent in suit, which read as follows:

"1. The combination with relatively reciprocating members one of which has an annular groove therein, of a trans-split radially resilient ring for sealing between said members, said ring being circumferentially slotted to form an axially resilient portion intermediate opposite side portions, being also peripherally insertable into said annular groove and being of a normal width greater than that of the groove to develop a predetermined pressure between the opposite side portions of the ring and the respective sides of the groove, said pressure being limited to permit radial movement of the ring in the groove under working conditions.

"2. The combination with relatively reciprocating members, one of which has an annular groove therein, of a trans-split ra-

dially resilient ring for sealing between said members, said ring being provided with staggered series of slots to form an axially resilient portion intermediate opposite side portions being also peripherally insertable into said annular groove and being of a normal width greater than that of the groove to develop a predetermined pressure between the opposite side portions of the ring and the respective side portions of the groove, said pressure being limited to permit radial movement of the ring in the groove under working conditions.

"3. The combination with relatively reciprocating members, one of which has an annular groove therein, of a trans-split radially resilient ring for sealing between said members, said ring being provided with staggered circumferential series of slots parallel to the sides of the ring and forming an axially resilient portion intermediate opposite side portions being also peripherally insertable into said annular groove and being of a normal width greater than that of the groove to develop a predetermined pressure between opposite side portions of the ring and the respective sides of the groove, said pressure being limited to permit radial movement of the ring in the groove under working conditions.

"4. The combination with relatively reciprocating members, one of which has an annular groove therein, of a trans-split radially resilient ring for sealing between said members, said ring being circumferentially slotted to form an axially resilient portion intermediate opposite side portions, the end portions on opposite sides of the split having substantially equal resiliency, said ring being also peripherally insertable into said annular groove and of a normal width greater than the groove to develop a predetermined pressure between opposite side portions of the ring and the respective sides of the groove, said side pressure being substantially uniform in all portions of the ring and being limited to permit radial movement of the ring in the groove under working conditions.

"5. A trans-split radially resilient ring circumferentially slotted to form an axially resilient portion intermediate opposite side portions and axially resilient end portions, the end portions on opposite sides of the split being symmetrical with respect to axial resiliency.

"6. A trans-split radially resilient ring circumferentially slotted to form an axially resilient portion intermediate opposite side portions, the end portions on opposite sides

of said split each having a slot therein extending to the split."

The first four claims are for combinations; the fifth and sixth claims being limited to the ring. The principal object of the invention, as described by the patentee in his specification, was "to provide a piston packing of simple and practical form and capable in an efficient manner of maintaining a substantially gas-tight joint between the piston and ring as well as between the latter and the cylinder wall."

With this object in mind, it is clear what the patentee meant in claim 1, which calls for the ring "being also peripherally insertable into said annular groove and being of a normal width greater than that of the groove to develop a predetermined pressure between the opposite side portions of the ring and the respective sides of the groove."

On the trial the defendant relied upon five patents to show invalidity:

United States patent to Cooper & Pattinson, No. 501,560, dated July 18, 1893, shows a construction of springs for forcing the piston rings outward and against junk rings or ends of the piston. The rings are not peripherally inserted, but are sleeved on the reduced portion of the piston and clamped down by means of a follower plate; neither are they slotted but are simply two rings placed side by side, and both radial and axial tension is imparted by an expander ring. This patent does not meet the terms of any of the claims of the patent in suit.

United States patent to Deranek, No. 1,340,650, dated May 18, 1920, shows rings for pistons of the types used with internal combustion engines. It does not show a trans-split ring, but on the contrary it shows two rings, the outer member being composed of two open or split rings 14 and 15, the same being connected to each other so that the rings overlap each other throughout their length. The rings are not of a normal width greater than that of the groove, and, as there is a solid section, the ring could not be inserted, if it was of the normal width greater than that of the groove.

United States patent to Douglas & Hays, No. 727,311, dated May 5, 1903, shows two helical spring coils, with the space between the adjacent coils of one section occupied by the coils of the other section. No trans-split or slotted ring is shown. This patent, like the two preceding patents, discloses the spiral or helical ring; but defendant does not make use of such a ring in his alleged infringing device.

British patent to William Lockwood, No.

5,096 of 1896, shows a spiral or helical ring, having a center convolution and two outside convolutions, also additional springs $f$, which have projections $f'$ extending in between the upper, lower, and intermediate convolutions of the ring. The ring is intended to be compressed between the piston flange and the junk ring, and William Lockwood did not intend to provide a ring which has the axial pressure "limited to permit radial movement in the groove under working conditions."

The clamping of the center convolution over the projection $f'$ renders impossible any such relation of the radial and axial pressures that the ring would follow out to the cylinder walls under working conditions. The patentee gained nothing from the teachings of the William Lockwood patent.

British patent to Carr Lockwood, No. 24,993 of 1898, shows a ring of the type intended for use in connection with high-pressure steam engines of the marine type, and the patentee was intent on providing a structure which would "enable complete control over its adjustment to be obtained." There is no groove in the piston, but the ring is sleeved on the reduced end of the piston, the junk ring put in position, and the rings clamped in place between a shoulder on the piston and one face of the junk ring.

The Carr Lockwood ring is not free to "breathe" radially when clamped in position by the block ring and junk ring $y$, because the radial movement is limited by the interengagement of annular shoulders on the packing ring and block ring. There is no disclosure in the Carr Lockwood patent of a piston with an annular groove therein, nor of a ring which is peripherally insertable into said groove, nor of developing a predetermined pressure between the opposite side portions of the ring and the respective sides of the groove; said pressure being limited to permit radial movement of the ring in the groove under working conditions.

[2] Both the Douglas & Hays United States patent, No. 727,311, and the Carr Lockwood British patent, No. 24,993 of 1898, were cited as references by the Patent Office, and the patent in suit was allowed over such references, and this greatly strengthens the presumption of its validity. Fairbanks, Morse & Co. v. Stickney (C. C. A.) 123 F. 79.

None of the patents of the prior art offered in evidence by the defendant, with the exception of the patent to Deranek, No. 1,-340,650, relate to a piston ring of the type employed in connection with pistons of internal combustion engines, and, as we have seen, the ring of that patent does not meet any of the claims of the patent in suit.

The defendant did not contend that any prior art patent disclosed "the end portions on opposite sides of the split being symmetrical with respect to axial resiliency," as called for in claim 5, or "the end portions on opposite sides of said split each having a slot therein extending to the split," as called for in claim 6, and he cannot take the position that these features are of no practical value, because he has copied them.

The defendant introduced in evidence the file wrapper and contents of the patent in suit, and contends that the patentee, by canceling the claims that were disallowed and the argument made on his behalf explaining the claims which were allowed, was estopped from claiming that the patent in suit covers the defendant's ring, which is used with an expander, and that he thereby limited himself to a ring which will move radially when seated in the piston groove, without requiring the supplemental means of an expander.

This contention seems to me to be without weight, because the evidence shows that all that is required to make the ring operate without an expander is to make it thicker, but that better results can be obtained by supplementing the radial motion by using the old and well known means of an expander. The use of an expander was not an invention of the defendant, but old and well known to the art; but, even if it was an invention of the defendant, it would be but an improvement, as the expander would not accomplish the results which defendant accomplishes, but for the ring which constitutes the invention of the patent in suit.

The contention of the defendant's expert that the arguments filed by the patentee at the time the claims in suit were inserted were false is not sustained; on the contrary, in my opinion, the arguments pointed out true and correct distinctions, rendering the claims of the patent in suit patentable over the art.

As hereinbefore pointed out, the Carr Lockwood patent was for a ring of the type intended for use in connection with high-pressure steam engines of the marine type, in which it was common practice to locate the rings so that they could not move outward radially. The Carr Lockwood ring is not a peripherally insertable ring.

The ring of the patent in suit is indicated in Figure 1 as having a butt joint, but it is not limited to that construction, because in the patent in suit it is stated: "While the ring is indicated in Figure 1 as having a butt

joint, it is contemplated that the essential features of the invention might be embodied in rings of other types and having lapped joints of any desired form."

The increased efficiency of the lapped joints, used by both plaintiff and defendant, over the long tongue extending from one side only, as shown in the Lockwood patent, is apparent, and was accomplished by the patentee in the patent in suit having the slots run inwardly on each side of the split.

Defendant's Exhibit D does not, in my opinion, show the ring disclosed in Carr Lockwood patent, No. 24,993, of 1898, but a ring constructed with the knowledge gained from the patent in suit; and, in view of my analysis of the Carr Lockwood patent, it is hardly necessary to point out the many changes which I find.

[3] The Carr Lockwood patent is a foreign reference, and must be taken for exactly what it shows on its face, and cannot be reconstructed to anticipate the patent in suit. Permutit Co. v. Harvey Laundry Co. (C. C. A.) 279 F. 713, Westinghouse Airbrake Co. v. Great Northern Ry. Co. (C. C. A.) 88 F. 258.

The rings sold by the defendant clearly infringe the patent in suit. They are transsplit radially resilient rings for sealing between relatively reciprocating members (the piston and cylinder), provided with staggered series of slots to form an axially resilient portion intermediate opposite side portions, peripherally insertable into the annular groove, of a normal width greater than that of the groove, to develop a predetermined pressure between the opposite side portions of the ring and respective side portions of the groove, and this pressure is limited to permit radial movement of the ring in the groove under working conditions.

In both plaintiff and defendant's commercial rings, under working conditions, an expander is used. The defendant's rings were sold as doing the same thing as plaintiff's rings.

[4] There is nothing in the patent in suit which provides that no expander is required; but, if there was, the defendant could not escape infringement by making the ring thinner and using an expander, because the evidence shows that all that would be necessary to make the ring self-operating, without the expander, would be to make it thicker, and therefore infringement is not avoided by making two separate pieces perform the same function as a single device. Pederson v. Dundon (C. C. A.) 220 F. 309; Barber v. Otis Motor Sales Co. (C. C. A.) 240 F. 723.

As I have before said, if the expander be an improvement and had been invented by defendant, infringement would not thereby be avoided, as the evidence shows that expanders have been used with many kinds of rings; but the advantages of the defendant's commercial structure are due to the ring, and the expander without the ring would be of no value.

That the patent in suit contemplated the use of an expander may reasonably be inferred from the words used in the claims, "under working conditions," because the use of expanders seems to have been general.

The patent is valid and all the claims were infringed by the defendant. An interlocutory decree may be entered in favor of the plaintiff against the defendant, directing the issuance of an injunction, on plaintiff's giving proper security, and for damages and costs, with the usual order of reference, to be settled on notice.

Upon the settlement of the decree I will hear the parties with reference to the security to be given by plaintiff, and also as to the security to be given by the defendant, and the conditions to be observed by him if he desires a suspension of the injunction pending appeal.