## WENSEL v. GOLD HILL HARDWARE MFG. CO. et al.

District Court, S. D. California, S. D. October 18, 1927.

1. **Patents ⚌328—1,574,222, for improvement in door and window bolts, held valid and infringed.**

Patent, 1,574,222, for improvement in door and window bolts, particularly a means for placing a frictional drag on sliding door bolts to retain them in the position in which they are last set, *held* valid and infringed.

2. **Patents ⚌45—Acceptance and general use of new structure in preference to old is evidence of patentable novelty.**

Prompt acceptance and general use of a new structure in preference to old devices is evidence of patentable novelty.

3. **Patents ⚌36(1)—That new combination and arrangement of elements produces new and beneficial result is evidence of invention.**

It is a general rule, though one not invariable, that, if a new combination or arrangement of known elements produces a new and beneficial result never before attained, it is evidence of invention.

4. **Patents ⚌172—Decided improvement in old and simple art which displaces structures of prior art should be considered with some measure of liberality in construing its scope and effect.**

When the improvement in an art or industry is a decided one, even in an old and simple art, and it rapidly displaces the devices and structures of prior art, it should be considered with some measure of liberality in construing its scope and effect.

5. **Patents ⚌319(3)—Additional damages may be asessed for unwarranted and inexcusable imitation of patented articles.**

Unwarranted and inexcusable imitation of patented product is grounds for assessment of additional damages on accounting.

In Equity. Patent infringement suit by Louis Wensel against the Gold Hill Hardware Manufacturing Company and others. Decree for plaintiff.

Shaw & McDaniel and Hamer H. Jamieson, all of Los Angeles, Cal., for plaintiff.

Alan Franklin and J. Calvin Brown, both of Los Angeles, Cal., for defendants.

McCORMICK, District Judge. [1] This is a suit in equity to restrain an alleged infringement of letters patent No. 1,574,222, of which plaintiff is assignee, and for an accounting. The defenses interposed are lack of invention and noninfringement.

The patent involves new and useful improvements in door and window bolts and the specifications state that the invention relates to bolts for fastening doors, window sashes, gates, and the like and especially to means for placing a frictional drag on sliding bolt bars to frictionally retain them in the position in which they were last manually set. The required frictional drag on the bolt bar is obtained by the insertion of a spring between the bar and the bolt plate, and in this way the necessity and expense of accurately fitting the bolt bar to its keepers is eliminated, the spring taking up all play between them. The patent further specifies:

"A special feature of the invention resides in the manner in which I have utilized the spring as a detent for purposes of limiting the extent of bar withdrawal movement. I accomplish this by notching the under side of the bolt bar; the end of the spring being adapted to engage the shoulder formed by the notch when the bolt is withdrawn to full unlocked position and thus prevent further withdrawal of the bar to retain the plate and bar in assembled relation.

"By reason of the novel construction employed, the assembling of the bolt is very easily accomplished without the aid of tools. The spring is provided with a projection which is adapted to protrude into a positioning socket formed in the base plate. In assembling, the bolt bar is merely thrust through the keepers and over the spring. The spring is thus positively positioned without being rigidly attached to either plate or bar, and subsequent separative withdrawal of the bar is prevented by the coaction of the spring and the bar notch. Thus, in contradistinction to the usual method of bolt assembly, no additional operation is necessary to prevent separative movement between the bar and the bolt plate."

A preferred form embodying the claimed invention is described and illustrated with this limitation:

"Various changes in structure, arrangement, and design may be made without departing from the spirit and scope of my invention, and therefore I do not wish to be limited to the specific embodiment illustrated except for such limitations as a fair interpretation of the appended claims may import."

From the evidence in this suit, I believe this invention marks progress in the industry of door and window bolt structures, and is a decided improvement over the prior art as disclosed by the record herein. I shall not discuss the references to earlier patents and

structures both foreign and American which defendants allege and·have sought to show defeat the patent in suit, as in my opinion none of them, except Vachette, France, No. 483,411, which will be discussed later, and a structure described as the Payson bolt, is in any substantial manner comparable to the Wensel invention. The evidence with respect to this Payson bolt, so-called, is so meager, indefinite, and vague that it is difficult to determine when and how generally it was used in the trade or as to its ultility and novelty therein. Suffice it to say that I believe that the Wensel bolt is a clear and distinct improvement, and possesses qualities of utility, novelty, and economy that amount to invention, and are in nowise affected by the Payson bolt described in the evidence.

[2] The advantages of the Wensel structure over all of the bolts shown by the record herein consist in its mode of operation, the simplicity of its construction, the cheapness of its manufacturing cost, and in its utility. The shortcomings of the earlier types of bolt in use were apparent, but the trade continued to use them until this patented type was disclosed and by its´ general and satisfactory use was proven to be efficient and economical. The prompt acceptance and general use of this new structure in preference to the old devices is evidence of patentable novelty. Allis-Chalmers Mfg. Co. v. Columbus Electric & Power Co. (C. C. A. 5) 19 F. (2d) 860.

[3] The demand for bolts in the trade and the desirability of improvement over known structures, both in the way of simplicity of construction and economy of manufacturing cost, was such that it may be inferred that some of the many skilled· persons engaged in the manufacture of door and window bolts would have brought about the use of a bolt similar to Wensel's before this patent was applied for, if the improvement made by the inventor had been no more than would have suggested itself to a mechanic of ordinary intelligence skilled in the art. It may be laid down as a general rule, though perhaps not an invariable one, that, if a new combination and arrangement of known elements produces a new and beneficial result never attained before, it is evidence of invention. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Potts v. Creager, 155 U. S. 597, 15 S. Ct. 194, 39 L. Ed. 275.

None of the bolts of the prior art submitted herein constitute anticipation of the Wensel invention as found in the patent in suit. In none of them, except to some ex-

tent in the French patent to Vachette, No. 483,411, does the spring member perform the combined functions of acting as a detent to prevent complete withdrawal of the bolt bar from assembly with the base plate and at the same time operate to frictionally retain the sliding bolt bar in the position in which last manually set, as well as to yieldably resist initial retractive movement of the bar from locked position. All are more complicated in construction, necessitating greater manufacturing cost. All are more cumbersome and therefore of less utility.

As I have said, the nearest approach of the earlier bolts disclosed in this suit to Wensel is the one shown in the French patent to Vachette, No. 483,411. But the construction and mode of operation of this foreign reference are so different from that of the Wensel bolt as to eliminate it from this suit as an anticipation of Wensel's concept. It is true that the spring in Vachette operates both as a detent and as a means to yieldably resist initial movement of the bar in either direction, but there is an essential difference in the mode or manner of effecting these results. In the Vachette bolt the spring slides with the bolt instead of being anchored in the base member, and the actual ends of the spring do not contact with anything, but project uselessly into space, and in Vachette the spring, by means of a hump or boss in the middle of its upturned arc protruding through the top of the bolt bar, acts as a detent or stop for the bolt bar at open and closed position. It also acts "to produce a certain resistance," and to fix or help to hold the bolt bar in its extreme or open and closed positions, which latter function, the patent itself states, could be eliminated. The French patent further states: "The essential requirement is that the bolt 4 be hollowed out, on the lower face, in such a manner as to form a cupped cavity for the reception of the specially arranged spring 6." It would thus appear that the essence of Vachette's invention is the protrusion of the hump or boss of the spring through the top of the hollowed-out bolt bar to act as a detent. In no suggested or disclosed conception of this French patent can a solid bolt bar be used. Further, the·detent of Vachette does not operate to *positively* limit the movement of the bolt bar in either direction. The resiliency of the spring and its placement in the bolt permits the movement of the bolt bar in either direction beyond the ordinary stop of the detent, by the application of slight manual effort; the detent, hump, or boss of the spring being forced back down through the top of

the bolt bar by contact with the bridge pieces. Wensel's bolt is so constructed as to *positively* limit the bolt bar withdrawal movement.

The defendants urge that anticipation of Wensel's patent is shown by a suggested modification of Vachette. This argument is of no avail to defendants. The Vachette patent is a foreign reference, and must be taken for exactly what it shows on its face, and cannot be reconstructed to anticipate the patent in suit. Simplex Piston Ring Co. v. Hamilton (D. C.) 21 F.(2d) 196, citing, Permutit Co. v. Harvey Laundry Co. (C. C. A.) 279 F. 713, and Westinghouse Air Brake Co. v. Great Northern Ry. Co. (C. C. A.) 88 F. 258.

I think that by relying on Vachette modified defendants confess that the French patent does not anticipate Wensel's concept as shown by the patent in suit. The modified Vachette is not a part of the prior art. See Topliff v. Topliff, 145 U. S. 156, 161, 12 S. Ct. 825, 36 L. Ed. 658; Western Electric Co. v. Home Tel. Co. (C. C.) 85 F. 649. The suggested modification has been produced by the light of Wensel's teachings. It is a subsequent art, created in the endeavor to defeat Wensel's concept. Ludwigs v. Payson Mfg. Co. (C. C. A. 7) 206 F. 60.

[4] The Wensel invention, while not primary in the sense of being the first window and door bolt of the general type to which it belongs, nevertheless is such a marked advance and progressive step in the art as disclosed by the record in this suit as to warrant the application of the principle of liberality in the construction of the claims of the patent now before us. When the improvement in an art or industry is a decided one, even in an old and simple art, and it rapidly displaces and supplants the devices and structures of the prior art, it should be considered with some measure of liberality in construing its scope and effect. The concept of one who thus contributes to the advancement of mechanics and commerce should be protected by liberal and broad construction in equity. The Supreme Court of the United States has repeatedly announced the rule for the interpretation and construction of the claims of such a patent as the one now under consideration. In discussing the doctrine of equivalents and the question of pioneer invention in Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121, it said: "The range of equivalents depends upon the extent and nature of the invention." And in the later case of Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122,

after reviewing its decisions interpreting the claims in patents of primary character, the court said:

"It is manifest, therefore, that it was not meant to decide that only pioneer patents are entitled to invoke the doctrine of equivalents, but that it was decided that the range of equivalents depends upon and varies with the degree of invention."

This same rule has been followed by the Circuit Court of Appeals for the Ninth Circuit in Letson v. Alaska Packers' Association, 130 F. 129, where, at page 140, the court said:

"So that, while it cannot be said that the Jensen machine was a pioneer patent, in the sense that it was the very first to accomplish the result of heading filled cans, Jensen nevertheless was the first to successfully head filled cans with any practicable degree of speed or efficacy. He brought to success what prior inventors had essayed and but very imperfectly accomplished. In so doing he adopted some devices that had been used before, combined them with others that had not been used, and added the necessary elements to make a practical and successful machine. His combination and invention was, we think, more than a mere improvement or perfection of what had preceded it. It was of such novelty and importance as to constitute a distinct step in the progress of the art, and it went into immediate and extensive use. Its claims are therefore entitled to a fairly liberal construction."

And to the same effect is Parker v. Stebler (C. C. A.) 177 F. 210, and also Stebler v. Riverside Heights O. G. Association, 205 F. 735, where Judge Dietrich, speaking for the Circuit Court of Appeals, stated:

"True, the plaintiff's rights do not extend beyond the claims in suit, and are subject to the limitations thereof; but the language of these claims is not, as argued by the defendants, to receive a narrow, literal construction. While the invention is not basic or primary, it is substantial and important, and is therefore entitled to a fair range of equivalents."

I am convinced by the evidence in this suit that the concept of Wensel as shown by the patent here in contest has so reduced the simplicity and cost of manufacture of door and window bolts as to entitle it to the dignity of invention and to justify a broad and liberal construction and interpretation of the claims of the patent.

The record here shows that the defendants' bolt was designed in a willful attempt to evade the patent in suit and to appropriate the fruits of the invention disclosed thereby.

Wensel's bolt and his concept was the starting point from which defendants' sprang. The elements of both bolts are practically the same. The only constructional difference upon which defendants can possibly rely is in the arrangement of the spring. The functions of the springs are identical. But defendants seek to avoid infringement by constructing their detent arrangement somewhat differently. The result, however, does not avoid infringement. The topmost part of defendants' spring, the point, or projection, or horn, that acts to engage the bolt bar in frictional contact as well as to deter withdrawal movement of the bolt bar, is in my opinion the mechanical equivalent of the free end of plaintiff's spring. Defendants sink one end of their spring in an aperture in the base and leave the other end projecting into the narrow space between the bolt bar and the base plate. They build a detent in the body of the spring by breaking away a piece of the spring or metal at the topmost point thereof, one end of such piece remaining attached to the body of the spring and the other end or the free end engaging the bolt bar in frictional contact and also functioning so as to engage the shoulder on the bottom of the bolt bar to prevent complete withdrawal movement thereof. In effect, defendants have but added more of the spring material to their spring member than is contained in plaintiff's spring but retain and embody the principle and mode of operation of plaintiff's spring by the use made of the free end of the projecting piece broken away from or uplifted from the body of the spring. Mechanically it is as effectively a free end of the spring for the functions to be performed as is the free end of the spring of the patent in suit. Whether defendants' addition of more spring material to the mechanically effective end of the spring and the imbedding of the end of the added structure in a second recess or opening in the base plate is an improvement over the patent in suit is immaterial and fruitless in this suit, in view of the use made by defendants in their device of the principle, means, and mode of operation of Wensel's invention, which are such as in my opinion to constitute defendants' device and bolts infringement of the patent in suit. The distinguishing characteristics of Wensel's invention are utilized. His means and mode of operation are adopted and are not changed in any substantial manner in defendants' structures. The bolt of defendants is practically a facsimile of plaintiff's invention. The change in the form in the spring element in defendants' device does

21 F.(2d)—62

not avoid infringement of the patent in suit. See National Hollow B. B. Co. v. Interchangeable B. B. Co. (C. C. A.) 106 F. 693.

The bolts of defendants, which the evidence shows were manufactured, vended, or sold by defendants, and especially the one marked "Plaintiff's Exhibit 3," are in my opinion infringement of the claims of letters patent No. 1,574,222, which patent and the claims thereof are held to be valid.

[5] With respect to the issue of unfair competition brought into this suit, I regard it as incidental and proper to be considered as an aggravation of the infringement herein decreed and to be taken into consideration in the accounting which is ordered as additional relief to the complainant herein, and, if upon such accounting defendants' imitation of plaintiff's invention and patent is shown to have been unwarranted and inexcusable, additional damages should be assessed and allowed herein. See Ludwigs v. Payson Mfg. Co., supra; K–W Ignition Co. v. Temco Co. (C. C. A.) 243 F. 588.

A decree and reference to David B. Head, Esq., United States commissioner at Los Angeles, Cal., for an accounting is ordered for complainants in accordance with this opinion, and solicitors for complainant will prepare and present the same under the rules of this court.