SIMPLEX PISTON RING CO. OF AMERICA
v. THACHER MOTOR SERVICE
CORPORATION.

No. 3262.

District Court, D. New Jersey.

Sept. 16, 1929.

Gifford & Scull, of New York City (Charles B. Belknap, of Detroit, Mich., and Newton A. Burgess, of New York City, of counsel), for plaintiff.

Darby & Darby, of New York City, for defendant.

BODINE, District Judge.

This is a suit for infringement of United States letters patent No. 1,601,575, issued September 28, 1926, on an application of August 20, 1921. The plaintiff is an Ohio corporation to whom the patent was issued as assignee. The defendant is a New Jersey corporation, and is a distributor of the Miracle rings, the manufacture, sale, and use of which in New York has, under the patent in suit, already been restrained on motion for preliminary injunction against the Miracle Piston Ring Company, the manufacturer of defendant's rings. The present patent in suit seeks both an injunction and an accounting.

The specification of the patent, so far as pertinent, provides:

"This invention concerns piston packing rings and relates more particularly to split metallic rings of the type employed in connection with the pistons of internal combustion engines.  *  *  *

"The problem of maintaining a gas tight joint between the piston and its ring while permitting the ring to expand fully into contact with the cylinder wall has proven exceedingly difficult of solution from a practical standpoint.  *  *  *

"The axial expansion of the ring into contact with the end walls of the groove would then in a highly effective manner prevent leakage around the ring as well as endwise reciprocation of the ring in its groove while at the same time the ring would be relatively free to expand radially of the groove."

All the claims are in suit except the third. They are as follows:

"1. The combination with relatively reciprocating members one of which has an annular groove therein of a trans-split radially resilient ring for sealing between said members, said ring being circumferentially slotted to form an axially resilient portion intermediate opposite side portions, being also peripherally insertable into said annular groove and being of a normal width greater than that of the groove to develop a predetermined pressure between the opposite side portions of the ring and the respective sides of the groove, said pressure being limited to permit radial movement of the ring in the groove under working conditions.

"2. The combination with relatively reciprocating members, one of which has an annular groove therein, of a trans-split radially resilient ring for sealing between said members, said ring being provided with staggered series of slots to form an axially resilient portion intermediate opposite side portions being also peripherally insertable into said annular groove and being of a normal width greater than that of the groove to develop a predetermined pressure between the opposite side portions of the ring and the respective side portions of the groove, said pressure being limited to permit radial movement of the ring in the groove under working conditions."

"4. The combination with relatively reciprocating members, one of which has an annular groove therein, of a trans-split radially resilient ring for sealing between said members, said ring being circumferentially slotted to form an axially resilient portion intermediate opposite side portions, the end portions on opposite sides of the split having substantially equal resiliency, said ring being also peripherally insertable into said annular groove and of a normal width greater than the groove to develop a predetermined pressure between opposite side portions of the ring and the respective sides of the groove, said side pressure being substantially uniform in all portions of the ring and being limited to permit radial movement of the ring in the groove under working conditions.

"5. A trans-split radially resilient ring circumferentially slotted to form an axially resilient portion intermediate opposite side portions and axially resilient end portions, the end portions on opposite sides of the split being symmetrical with respect to axial resiliency.

"6. A trans-split radially resilient ring circumferentially slotted to form an axially resilient portion intermediate opposite side portions, the end portions on opposite sides of said split, each having a slot therein extending to the split."

The patent in suit has previously been held to be valid by the United States District Court for the Eastern District of New York, in a suit brought by the plaintiff against Arden L. Hamilton, doing business as the Hamilton Motor Parts Company. Simplex Piston Ring Co. of America v. Hamilton, 21 F.(2d) 196, 197. The decree was affirmed by the Court of Appeals for the Second Circuit, 25 F.(2d) 1022, without opinion.

The defenses relied upon will be considered in their order.

It is urged that the patent is for a piston packing ring of the construction defined in the claims, and is wholly invalid, because the description of the invention in the specification is not sufficient to enable one skilled in the art to produce the patented device having the advantages claimed for it.

In support of this contention, reliance is placed upon the testimony of defendant's expert, William McC. Stewart Jackson, to the effect that there was nothing in the patent that disclosed the width and depth of the groove or the number of saw slots, and that, to design a ring to fit into a particular groove, it would be necessary to cut and try in order to increase its distensive or radial action.

The answer of the witness, Alanson P. Brush, to that proposition, is as follows:

"It is not difficult to determine what to do. It is a very simple proposition. The laws of elasticity of materials are well known and have been for many years in engineering. The Marshall patent, so far as its radial behavior is concerned, is identical with an ordinary solid ring. The combination is of a continuous sealing contact on the two sides of the slot predetermined at such a value that it will not interfere with this normal radial action of the ring. The length of the bars, the number of the bars—I am now referring to the spring bars that are formed by the Marshall slotting—the depth of the bars in both directions would be a very simple matter to determine by calculation in order to give a certain axial tension on the two sides of the ring.

"Of course, it must be also borne in mind that the coefficient of friction to lubricated surfaces is well below 10%, so that a very

considerable error in carrying out calculated values might produce some little error in the value of the sealing tension, but that can vary through a substantial range without in any way interfering with the free radial action of the ring under service conditions. I would say it was a problem of very elemental mechanics once the method of doing it had been disclosed.

"As an engineer, he would be able to take the disclosure of the Marshall patent and construct a ring with the number of slots shown in Fig. 2 of the Marshall patent and have it sealed against the top and bottom grooves of the piston ring and limit that pressure so that the ring would be free to follow out to the cylinder walls under ordinary working conditions."

█ Other corroborative proof was further offered. It seems that the inventor did all that was required. He makes his plan clear, and points out the way to do it. Telephone Cases, 126 U. S. 536, 8 S. Ct. 778, 31 L. Ed. 863; Eibel Process Co. v. Minnesota Paper Co., 261 U. S. 65, 43 S. Ct. 322, 67 L. Ed. 523.

In the plaintiff's commercial ring, expanders are used, but the proofs indicate that this is not because the rings will not operate, but because they will operate more efficiently in commercial practice where the expander is used.

██ The next defense presented is that the patent is invalid because the alleged invention, as claimed, is anticipated by or involves no invention over the prior art, knowledge, and use. Of the prior art patents, the Lockwood, Douglass and Hays, and Deranek patents were before the Circuit Court of Appeals for the Second Circuit in Simplex v. Hamilton, supra. The Taylor patent was before Judge Winslow when he granted a preliminary injunction.

Judge Campbell disposed of the first three references as follows:

"United States patent to Deranek, No. 1,340,650, dated May 18, 1920, shows rings for pistons of the types used with internal combustion engines.

"It does not show a trans-split ring, but on the contrary it shows two rings, the outer member being composed of two open or split rings 14 and 15, the same being connected to each other so that the rings overlap each other throughout their length.

"The rings are not of a normal width greater than that of the groove, and, as there is a solid section, the ring could not be insert-

ed, if it was of the normal width greater than that of the groove.

"United States patent to Douglas & Hays, No. 727,311, dated May 5, 1903, shows two helical spring coils, with the space between the adjacent coils of one section occupied by the coils of the other section.

"No trans-split or slotted ring is shown.
* * *

"Both the Douglas & Hays United States patent, No. 727,311, and the Carr Lockwood British patent, No. 24,993 of 1898, were cited as references by the Patent Office, and the patent in suit was allowed over such references, and this greatly strengthens the presumption of its validity. Fairbanks, Morse & Co. v. Stickney (C. C. A.) 123 F. 79.

"None of the patents of the prior art offered in evidence by the defendant, with the exception of the patent to Deranek, No. 1,340,650, relate to a piston ring of the type employed in connection with pistons of internal combustion engines, and, as we have seen, the ring of that patent does not meet any of the claims of the patent in suit.

"The defendant did not contend that any prior art patent disclosed 'the end portions on opposite sides of the split being symmetrical with respect to axial resiliency,' as called for in claim 5, or 'the end portions on opposite sides of said split each having a slot therein extending to the split,' as called for in claim 6, and he cannot take the position that these features are of no practical value, because he has copied them.

"The defendant introduced in evidence the file wrapper and contents of the patent in suit, and contends that the patentee, by canceling the claims that were disallowed and the argument made on his behalf explaining the claims which were allowed, was estopped from claiming that the patent in suit covers the defendant's ring, which is used with an expander, and that he thereby limited himself to a ring which will move radially when seated in the piston groove, without requiring the supplemental means of an expander.

"This contention seems to me to be without weight, because the evidence shows that all that is required to make the ring operate without an expander is to make it thicker, but that better results can be obtained by supplementing the radial motion by using the old and well known means of an expander.

"The use of an expander was not an invention of the defendant, but old and well known to the art; but, even if it was an invention of the defendant, it would be but an

improvement, as the expander would not accomplish the results which defendant accomplishes, but for the ring which constitutes the invention of the patent in suit.

"The contention of the defendant's expert that the arguments filed by the patentee at the time the claims in suit were inserted were false is not sustained; on the contrary, in my opinion, the arguments pointed out true and correct distinctions, rendering the claims of the patent in suit patentable over the art.

"As hereinbefore pointed out, the Carr Lockwood patent was for a ring of the type intended for use in connection with high-pressure steam engines of the marine type, in which it was common practice to locate the rings so that they could not move outward radially.

"The Carr Lockwood ring is not a peripherally insertable ring.

"The ring of the patent in suit is indicated in Figure 1 as having a butt joint, but it is not limited to that construction, because in the patent in suit it is stated:

" 'While the ring is indicated in Figure 1 as having a butt joint, it is contemplated that the essential features of the invention might be embodied in rings of other types and having lapped joints of any desired form.'

"The increased efficiency of the lapped joints, used by both plaintiff and defendant, over the long tongue extending from one side only, as shown in the Lockwood patent, is apparent, and was accomplished by the patentee in the patent in suit having the slots run inwardly on each side of the split."

The witness Brush indicates that Taylor and Deranek had something in mind quite different from Marshall. He says: "The Deranek has one solid portion and Taylor has several. Of course, they do not only prevent the ring being of greater dimension than the groove, they demand that it be made of—well, I will say, substantially less, because we do find when we are dealing with oil films, the two or three or four thousandths necessary side clearance is a very substantial amount in dealing with the problem of oil seal and gas seal."

In fact, he is corroborated by defendant's expert Jackson, whose pertinent testimony is: "Q. In both the Taylor and Deranek patents there is a solid portion of the ring which would prevent the ring from being made of normally greater width than the ring groove, wouldn't it? A. Yes, you could not make it all the way around."

This brings us to the alleged Kottusch prior use, the only new thing in the present case. In 1918, Kottusch applied for and was granted a patent for an improvement in piston rings, patent No. 1;323,192. The ring of the patent is structurally different from the plaintiff's, and is less effective. Kottusch testifies that, at the time he was securing this patent and interesting others in the manufacture of the ring, he made a number of rings of the plaintiff's design, and that, although he took no patent on them, they were so highly regarded that four are produced after doing duty in several cars. The rings produced may or may not have been manufactured and used as testified to, but, even if they were, there was neither invention or anticipation of the patent in suit. Pyrene Mfg. Co. v. Boyce (C. C. A.) 292 F. 480, 485.

There was no commercial construction made, and the performance of the rings indicated nothing to the alleged inventor. Further, the rings had only two parallel slots, and the slots were completely closed when the ring was in place, so that it was practically a solid ring without possibility of expansion. There was testimony that the Kottusch ring, because of its construction, would tilt so that a continuous seal would not be found. It seems probable that the two bars would have this effect. At all events, Marshall claimed and secured a side pressure substantially uniform in all portions of the ring. There is force in the testimony of Mr. Brush that the absolute minimum which would make a complete seal is three. The only opposition to this statement of a physical law is the testimony of the witness, who was so devoted to the trial rings that he used them in several cars, and he merely said they worked well. He neither knew nor stated anything as to the seal. Mere working well is too intangible a statement to be regarded as evidence of anticipation.

Finally, it is suggested that the patent is not infringed. Of course, it is elemental that there must be identity of means and results to constitute infringement. The identity is apparent. The defendant's rings are sold to be used in connection with the pistons and cylinders of internal combustion engines. The instruction sheet for their use is almost identical with the plaintiff's instruction sheet. The rings bear a striking resemblance, and do seal the top and bottom faces. The axial pressure is limited to permit the radial move-

ment of the ring in the groove under working conditions.

Judge Campbell stated in the Hamilton Case: "They are trans-split radially resilient rings for sealing between relatively reciprocating members (the piston and cylinder), provided with staggered series of slots to form an axially resilient portion intermediate opposite side portions, peripherally insertable into the annular groove, of a normal width greater than that of the groove, to develop a predetermined pressure between the opposite side portions of the ring and respective side portions of the groove, and this pressure is limited to permit radial movement of the ring in the groove under working conditions."

What difference can it make that defendant employs an overlapping slot. True, defendant's ring is not radially resilient unless used with an expander, but the instruction sheet directs such use, and, as Judge Campbell pointed out, ordinary working conditions contemplate such use. Further, Judge Campbell said: "That the patent in suit contemplated the use of an expander may reasonably be inferred from the words used in the claims, 'under working conditions,' because the use of expanders seems to have been general."

The commercial success of the invention is evidenced by the sale of more than 3,000,-000 rings of a total value of $4,500,000.

I find myself in complete accord with the Circuit Court of Appeals for the Second Circuit and a decree for injunction and an accounting may issue forthwith.