368

## MOORE v. FINBERG.
### No. 4441.

District Court, D. Massachusetts.

May 10, 1938.

Herbert A. Baker and Alan B. Bagley, both of Boston, Mass., for plaintiff.

Max N. Lebowitz, of Boston, Mass., for defendant.

BREWSTER, District Judge.

This is a suit for infringement of United States patent No. 1,857,209, granted May 10, 1932, to George A. Moore of Boston, the present plaintiff, upon an application filed March 2, 1932. The defendant has not attempted to attack the validity of the patent as provided by statute, see U.S. C., title 35, § 69, 35 U.S.C.A. § 69, and the only issue here presented is that of infringement. The plaintiff seeks an injunction and an accounting.

The following, in so far as it contains statements of fact or conclusions of law, may be deemed a compliance with Equity Rule 70½, 28 U.S.C.A. following section 723.

The invention protected by the patent in suit is designed to provide a set of toy motor parts of such a nature that they may be put together by a young person with little or no mechanical skill, thus providing a toy electric motor which, when assembled, will operate from an ordinary dry cell battery and will demonstrate on a miniature scale all the fundamental principles involved in the construction and operation of a direct current motor. Because of its educational possibilities, the device is not only useful as a toy but has found wide acceptance in schools.

The toy motor made by the plaintiff in accordance with the teachings of his patent is packed for sale in a small cardboard box about five inches long, three inches wide, and one-half inch deep. The cover of this box serves as a base for the assembled motor. The various parts supplied are mounted on this base by means of staple shaped fasteners. Slits are punched in the base at proper places to receive these fasteners, thus helping the operator to mount his parts in their correct positions. The parts provided include a field magnet, and core, with its winding; an armature, including core, winding and shaft; a commutator mounted on the shaft; bearings to support the shaft; and brushes. These parts are mounted and assembled in the manner indicated below.

Seated on the base are two bearings, so-called, consisting of pieces of three-eighths inch stiff metal ribbon, bent at right angles so as to provide feet for mounting, and

vertical standards pierced with holes near the top to serve as bearings for an armature shaft. When properly mounted, these bearings serve to hold the armature shaft about seven-eighths of an inch above the base and permit it to rotate freely.

The armature is mounted near one end of this shaft and consists of a core of two pieces of metal ribbon, each about an inch long, having recessed portions adapted to clamp on either side of the shaft. The pieces are held together by the armature winding, so that the whole armature is thus clamped to the shaft by friction. The armature winding has five turns of enameled copper wire wound around the core pieces on each side of the shaft, making ten turns in all. The ends of the armature winding are then scraped bare of their enamel insulation and passed through holes in two disks of insulating material, frictionally mounted on the shaft at the other end from the armature. The holes in these disks are so arranged that the bare ends of the wires are held parallel to the shaft, but on opposite sides thereof and separated from the shaft itself. Thus the portion of the bare wires extending between the two insulating disks forms a midget two-segment commutator for the completed motor.

The field magnet is made of three separate pieces of the same size metal ribbon as is employed for the bearings and the armature core. It includes a core piece so bent that it has a central portion raised slightly from the base, two end sections which serve as feet, and intermediate shoulders. Twenty turns of wire are wound on the central portion, thus providing a field winding. The pole pieces are shaped so that they have feet which rest against the end portions of the core piece and then rise in a semicircular fashion, so that they partially surround the armature which, in turn, is free to rotate in the circular space between the pole pieces.

Two pieces of bare wire are also mounted on the base in such a manner that they extend upwards and rest lightly against the commutator previously described. These wires serve as brushes. The brushes have feet terminating in loops of wire. The loops of wire are mounted underneath the inner prongs of a pair of two-pronged copper plates provided for the purpose. Connecting wires equipped with similar loops are fastened underneath the outer prongs of these plates.

The armature winding and the field winding are connected in series and together are connected to a dry cell battery. If carefully put together, the motor is supposed to attain a speed of 6,000 revolutions per minute for short intervals.

At the trial, counsel for the plaintiff stated that he would rely upon claims 1, 4 and 5 of the patent. Claim 1 reads: "A toy electric motor comprising motor elements including a field magnet, a rotary armature having a shaft, bearings for said shaft, a commutator on the shaft, and a pair of commutator brushes, said magnet, bearings, and brushes having feet, a base supporting said feet and having indicating means showing the required relative positions of the feet thereon, and fasteners securing said feet to the base, said indicating means showing the required location of said fasteners and feet, and enabling said elements to be assembled by a novice in building the motor."

Claim 4 covers, in addition to the features set forth in claim 1, certain details in the construction of the field magnet, and claim 5 covers similar details in the construction of the brushes.

The defendant's toy motor closely resembles that of the plaintiff in size and general appearance. It operates in the same manner and from the same sources of current. It is intended for the same purposes as the plaintiff's motor. Every element set forth in claim 1 of the patent in suit is to be found in the defendant's motor. It is sold in a cardboard box of almost exactly the same size as that used by the plaintiff. The defendant's motor uses the bottom of its box instead of the top as a base. The base is provided with slits to show the proper places for mounting the various parts in the same manner as is employed by the plaintiff and described in his patent. The ingenious two-segment commutator is copied identically by the defendant.

The defendant's motor does, however, show certain differences in construction. The defendant's field magnet is made all in one piece, instead of having separate core and pole pieces as shown by the plaintiff. The defendant claims better mechanical stability and greater electrical efficiency for his construction, although of course no current flows through the pole pieces. When assembled, however, the plaintiff's three piece field magnet is of the same size and

shape as the one piece magnet of the defendant and operates in much the same manner.

The defendant uses a single piece of metal for both bearings, thus having a three-sided strip, the middle portion of which rests on the base, and the end portions of which extend upwards vertically. This takes the place of the two right angle shaped bearing members used by the plaintiff. Again, greater mechanical stability is claimed. The bearings in both motors operate in the same fashion, however, and in both motors are almost exactly the same distance apart at the point where they support the armature shaft.

The defendant uses a different type of paper fastener to mount his parts. In place of the two-pronged, staple shaped fasteners used by the plaintiff, the defendant uses a fastener in which two prongs pass through one hole in the base, and are separated underneath the base. The use of such fasteners is largely made possible by the unification of parts described above. Otherwise, there is no difference in the operation of the fasteners.

The defendant recommends twenty-one turns on the field core instead of twenty turns, as recommended by the plaintiff. Both motors use ten turns for the armature winding. It was not shown, however, that this minor change made any substantial difference in the efficiency of operation of the two motors.

Finally, the defendant claimed a difference in the construction of his armature core. He uses two pieces of metal of the same size and shape as those of the plaintiff, but as supplied by the defendant these pieces are connected together slightly at one end. Since in both motors the armature core pieces are held together, or nearly so, when assembled, by the armature winding, this difference is of no practical importance.

■ I do not consider these differences sufficient to avoid infringement of any of the claims in suit. As stated by Mr. Justice Clifford in Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, at page 125, 24 L. Ed. 935: "In determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result."

To the same effect are Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S. Ct. 9, 74 L.Ed. 147; Hiler Audio Corp. v. General Radio Co., D.C., 26 F.2d 475. Applying this test, it is evident that the defendant's motor performs the same function as that of the plaintiff in substantially the same manner. The same observation applies to those individual parts of the defendant's motor, in which the construction varies slightly from that shown by the plaintiff. Both devices are toy motors of the same size, the same general appearance, have the same elements, operate in the same manner, and are intended for the same purposes.

■ It is urged that, since the patent in suit is for a combination of elements, any variation is sufficient to avoid infringement. This does not represent the law. An inventor is entitled to a range of equivalents commensurate with the scope of his invention. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122; Walker on Patents, Dellar Ed., § 471.

■ The defendant's motor is within these limits. As stated in Sanitary Refrigerator Co. v. Winters, supra, page 42, 50 S.Ct. page 13: "Even where, in view of the state of the art, the invention must be restricted to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom, it is nevertheless infringed by a device in which there is no substantial departure from the description in the patent, but a mere colorable departure therefrom."

■ Such is the nature of the departures presented in the case at bar. Mere unification of parts is not ordinarily sufficient to avoid infringement. Sears, Roebuck & Co. v. Delta Mfg. Co., 7 Cir., 78 F.2d 745; Hookless Fastener Co. v. Prentice Mfg. Co., 2 Cir., 75 F.2d 264; Bundy Mfg. Co. v. Detroit Time-Register Co., 6 Cir., 94 F. 524; Walker on Patents, Dell.Ed., § 462.

Nor is improvement in and of itself sufficient. "It is well established that an improver cannot appropriate the basic patent of another, and that the improver without a license is an infringer, and may be sued as such." Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 173, 72 L.Ed. 298.

I conclude that the defendant has infringed claims 1, 4 and 5 of United States patent No. 1,857,209, and that the plaintiff is entitled to the relief sought.